# No. 18-CV-4776

United States District Court for the Southern
District of New York

FELICIA PIERCE

*Appellant,*

-AGAINST-

BREITBURN ENERGY LP., ENTITIES

*Appellee.*

On Appeal from an Order of the
United States Bankruptcy Court Southern District of New York

**BRIEF OF APPELLANT**

Felicia Pierce (Pro Se)
3708 Bluff Creek Lane
McKinney, TX 75070
972-876-9718
scorpio76140@gmail.com

WEIL, GOTSHAL & Manges LLP
Attorneys for Appellee
767 Fifth Avenue
New York, New York 10153
Ray C. Schrock P.C. Esq
Stephen Karotkin, Esq
Edward Soto, Esq

RECEIVED
SDNY DOCKET UNIT
2018 JUL 26  PM 3:38

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-26-18

# **TABLE OF CONTENTS**

Counsels…………………………………………………………1

Table of Contents………………………………………....…..2

Table of Authorities…………………………………………3

Rules……………………………………………….…………4

Preliminary Statement……………………………………...4,5,6,7

Jurisdiction…………………………………………..………7

Statement Of Facts……………………………………7,8,9

Argument……………………………10,11,12,13,14,15,16,17,18

Conclusion…………………………………………...19,20

Prayer………………………………………………...21

Certificate of Compliance…………………………………22,23

Certificate of Service…………………………………………24

# TABLE OF AUTHORITIES

People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980).......13

Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23.................................................................14

Triad Energy Cop. v. McNell 110 F.R.D. 382 (S.D.N.Y. 1986)...14

Allcock v. Allcock 437 N.E. 2d 392 (Ill. App. 3 Dist. 1982)........15

People v. Rolland 581 N.E.2d 907, Ill.App. 4 Dist. 1991)............15

Gazes v. DelPrete (In re Clinton Street Food Corp.), 254 B.R. 523, 532 ..16

Armatas v. Maroulleti, 690 F. App'x 731, 732 (2d Cir. 2017).........16

Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1325 (2d Cir.1995)....16

Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988)...............17

Linkco, Inc. v. Akikusa, 367 F. App'x 180, 182 (2d Cir.)...............17

McMunn v. Mem'l Sloan–Kettering Cancer Ctr., 191 F.Supp.2d 440, 445 (S.D.N.Y.2002)....................................................17

Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)............17

Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010)...............................................................17

O'Neill v. Hernandez, No. 08 Civ. 1689 (KMW), 2010 WL 1257512, at *14 (S.D.N.Y. Mar. 25, 2010).............................................17

Longoria v. Exxon Mobil Corp., 255 S.W.3d 174, (Tex. App-San Antonio 2008, pet denied)....................................................8,10

Pandozy v. Segan, 518 F. Supp. 2d 550, 555 (S.D.N.Y. 2007), aff'd, 340 F. App'x 723 (2d Cir. 2009);..............................................17

Wagner Spray Tech Corp. v. Wolf, 113 F.R.D. 50, 52 (S.D.N.Y. 1986); Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)..........................17

Marine Ins. Co. of Alexandria v. Hodgson, 11 U.S. (7 Cranch) 332, 336 (1813)...............................................................19

## RULES

Rules of Civil Procedure 60(B)(3)(4)(6) …………………………..4

T.R.C.P. 39…………………………………….5,6,7,8,9,10,11,12,14,19

T.R.C.P. 784……………………..,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,6,11

## <u>APPELLANT'S BRIEF ON THE APPEAL OF THE ADVERSAY COMPLAINT IN THE BANKRUPTCY COURT</u>

## TO THE HONORABLE JUDGE CARTER:

## *<u>PRELIMUNARY STATEMENT</u>*

Appellant (Felicia Pierce) appeals final judgment entered pursuant to Federal

Rules of Civil Procedure 60(B)(3)(4)(6), a decision by the United States

Bankruptcy Court Southern District of New York dismissing all of Plaintiff's

adversary proceeding claims adhered to the mineral estates of P.W. Warraner

Survey located in Kilgore, Texas. Plaintiff asserted the law govern to Texas Trespass to Try title during the trial court located in Longview, Texas (case # 2015-1679-CCL2) and appeals court located in Texarkana, Texas (case # 06-17-00013). Plaintiff filed first petition in September of 2015 against other defendants concerning property P. W. Warraner Survey abstract 214 located in Kilgore, Texas. This property in question was illegally severed by non-owners and against all real estate laws in Texas used to relinquish all rights against true documented un-divided interest owners of their use of the property and the minerals. Plaintiff amended the petitions several times prior to defendants placing an abatement on Plaintiff case. The abatement was granted on November 12, 2015 due to Texas Rule 39, (*RULE 39. JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION (a) Persons to Be Joined If Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the*

*court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff).* The presiding judge (Dulweber) precisely stated what the Plaintiff needed to do to move forward in Plaintiff litigation. When Plaintiff filed her Motion to Lift Abatement, (**Motion** – A written or oral petition to the court requesting an order or ruling in a legal matter), Plaintiff acknowledged the courts order and complied with each word, sentence and paragraph to lift the abatement that was placed against Plaintiff due to Texas rule 39. Plaintiff (*Pierce*) researched and the T.R.C.P 784 that governs Trespass to Try Title and landed all the prerequisites needed to pursue Trespass to Try Title. Prerequisites are mandated in the court of law when filing a claim of action against another person. The Motion to Lift Abatement was scheduled for March 4, 2016 along with the Motion to Sever. The Motion to Lift abatement commenced first in order to proceed with any other motion and all arguments. The Motion was read, heard and took into careful consideration from all officers of the court including the judge (Judge Dulweber). According to the courts abatement order Plaintiff (Pierce) case was diagnose with the lack of parties that needed to be named, served and answered in a court of law. The weakness of the prior petitions lacked strength to see victory in (Judge Dulweber) court. The cure for Texas rule 39 lies in

the motion to lift abatement. The trial court decided to Grant Plaintiff's motion to Lift abatement due to curing the abatement order. Naming all those needed to be named, taking out Declaratory Judgment and Quite Title (along with their prerequisites) and adding Trespass to Try Title to Plaintiff petition and all the rules that govern Trespass to Try Title. Defendants filed motion to dismiss Plaintiff case and all claims of actions against all defendants including (Breitburn Entities). Texas trial court dismissed plaintiff case with prejudice (sua sponte) due to joinder.

## *JURISDICTIONAL STATEMENT*

The district court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. Following entry of a Memorandum Opinion and Order granting Defendants' motion for dismissal on May 7, 2018, the District Court entered final judgment on May 7, 2018. Plaintiffs-Appellants timely filed a Notice of Appeal on May 18, 2018.

## *STATEMENT OF FACT*

1. On September 10th, 2015 Appellant ("Pierce") filed a suit based on Quiet Title and Declaratory Judgment in Texas in the Gregg County District Court (#2015-1679-CCL2).

II. On November 12, 2015 the judge presiding over case #2015-1679-CCL2 entered a Ruling and Order on Plea in Abatement according to Rule 39.

III. On January 25, 2016, Pierce filed a Motion to Lift Abatement to show the court that she _complied_ with the Court's **November 12ᵗʰ Order on Plea in Abatement** which cited      Rule 39.

IV. On March 4, 2016, with acknowledgement and agreement of all legal counsel who were present, Judge Vincent Dulweber LIFTED the abatement order due to Pierce's Motion to Lift Abatement.

V. On the same day, March 4, 2016, Breitburn Entity's legal counsel along with multiple other legal counsel for other Appellees moved to dismiss Appellant's suit for noncompliance with Judge Dulweber's **November 12ᵗʰ Order on Plea in Abatement**.

VI. On the same day, March 4, 2016, Judge Vincent Dulweber continued the suit and requested that Pierce abide with his **November 12ᵗʰ Order on Plea in Abatement** or Appellant's suit would be subject to dismissal until she added more parties to her suit.

VII. On May 9, 2016, Appellant added to her suit and served Breitburn Entities and multiple other parties to the suit even though Appellant's Motion to Lift Abatement had been granted as the abatement was lifted.

VIII. On May 15, 2016, Breitburn Entities filed for Chapter 11 Bankruptcy in the Southern District of New York which stayed Appellant's suit.

IX. On August 17, 2016 Appellant filed an Adversary (Cause #16-01198) the Southern District of New York Bankruptcy court.

X. On September 2, 2016 Appellee(s) moved to dismiss Appellant's Texas suit.

XI. On October 13, 2016 Judge Vincent Dulweber (an officer of the court) dismissed Pierce's Texas suit *with prejudice*, <u>causing fraud upon the court</u>.

XII. On March 17, 2017 Judge Stuart Bernstein dismissed Appellant's suit due to claims of res judicata based on the Texas judge's decision.

XIII. On December 22, 2017 Appellant filed a Motion to Vacate Judgment Due To Fraud Upon The Court.

XIV. On January 3, 2018, Judge Stuart Bernstein ordered that cause #16-01198 be reopened.

XV. On May 7, 2018 Judge Bernstein denied Appellant's Motion to Vacate Judgment Due To Fraud Upon The Court and reclosed adversary case #16-01198.

## **_ARGUMENT AND ISSUES_**

On _September 10th, 2015_ Appellant ("Pierce") filed a suit based on Quiet

Title and Declaratory Judgment in Texas, in the Gregg County District Court

and immediately after on that day was assigned a County Court at Law

judge.  _(Exhibit A-Original Petition)_

On _November 12, 2015_ the judge presiding over case #2015-1679-CCL2

entered a Ruling and Order on Plea in Abatement according to _Rule 39_ and

exercised his discretion to order Pierce to add all necessary parties in

accordance with Texas Rule of Civil Procedure based on Rule 39 _(citing_

_Longoria v. Exxon Mobil Corp., 255 S.W.3d 174, (Tex. App-San Antonio_

_2008, pet denied) (Exhibit B- Ruling)_

RULE 39

(a) _**Necessary joinder.** Except as otherwise provided in these rules,_
_persons having a joint interest shall be made parties and be joined_
_as Appellants or Appellees. When a person who should join as a_
_Appellant refuses to do so, he may be made a Appellee or, in_
_proper cases, an involuntary Appellant._

- _Appellant ("Pierce") named only Lottie Guttry in her Original_
_Petition_

(b) _**Effect of failure to join.** When persons who ought to be parties if_
_complete relief is to be accorded between those already parties, have_
_not been made parties and are subject to the jurisdiction of the court,_
_the court **shall** order them made parties. The court in its discretion may_

*proceed in the action without making such persons parties, if its jurisdiction over them can be acquired only by their consent or voluntary appearance; but the judgment rendered therein shall not affect the rights or liabilities of persons who are not parties.*

*(c) Names of omitted persons and reasons for non-joinder to be pleaded. In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties, if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted.*

On *November 12, 2015*, Judge Dulweber abated Pierce's suit and ordered Pierce to re-plead in conformance with Texas Rule of Civil procedure by joining all necessary parties to her suit for Quiet Title and Declaratory Judgment at the court's discretion according to *Rule 39*. Appellant (Pierce) re-pleaded in conformance with applicable rules of civil procedure under TRCP 784 as Appellant changed her pleading to Trespass to Try Title and removed both Quiet Title and Declaratory Judgment from her pleadings. Due to the minerals being considered severed from the property, Appellant added all of those in possession of the top surface property and a Motion to Sever was filed to sever the case for the mineral estate claimants whom did not have any privity with the top surface estate claimants which was the reason those parties were not added. *(Exhibit- C, Plea in Abatement Order)*

On *January 25, 2016*, Pierce filed a Motion to Lift Abatement to show the court that she complied with the Court's Order on Plea in Abatement which

cited Rule 39 and she added all necessary parties in conformance with Texas rules of civil procedure for Trespass to Try Title. Appellant's Motion to Lift Abatement closed with the following statement *"This Motion to Lift Abatement shows compliance with Judge Dulweber's order, in prayer to lift the abatement and proceed with continuance of this Cause No. 2015-1679-CCL2."* *(Exhibit D- Motion to Lift Abatement)*

On *March 4, 2016*, with acknowledgement and agreement of all legal counsel who were present, Judge Vincent Dulweber took into consideration Pierce's Motion to Lift Abatement which showed that she complied with his Order on Plea in Abatement which was included with his written ruling that cited **Rule 39** (Longoria v. Exxon Mobil Corp., 255 S.W.3d 174, (Tex. App-San Antonio 2008, pet denied)) The order granting Pierce' Motion to Lift Abatement states the following:

> *"On this day came on to be considered Appellant's Motion To Lift abatement. The Court <u>after considering the Motion of Appellant and the Court's file</u>, finds that the Abatement of this Cause should be LIFTED*
>
> *It is THEREFORE ORDERED, that the Abatement of this Cause by <u>Order dated November 12, 2015</u>, <u>is hereby LIFTED</u>.*
>
> *It is FURTHER ORDERED that the Clerk of this Court shall reinstate this Cause on the Court's Docket."*

On this same day *(March 4, 2016)* after the order granting Appellant's Motion

to Lift Abatement was entered, Judge Vincent Dulweber (an officer of the Court) without jurisdiction due to Appellant complying with his November 12, 2015 order demanded Appellant ("Pierce") add additional parties to her suit or Appellant's suit would be subject to being dismissed, in turn interrupting the judicial machinery of the court, causing *fraud upon the court*, which in turn caused Judge Vincent Dulweber to lose jurisdiction over Appellant's suit, because he was disqualified by law.

*(Exhibit-E, Order Lifting Abatement)*

*A judge is an officer of the court, as well as are all attorneys. A state judge is a state judicial officer, paid by the State to act impartially and lawfully. A federal judge is a federal judicial officer, paid by the federal government to act impartially and lawfully. State and federal attorneys fall into the same general category and must meet the same requirements. A judge is not the court. People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980). "The Supreme Court has also held that if a judge wars against the Constitution, or if he acts without jurisdiction, he has engaged in treason to the Constitution. If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggest that he is then engaging in criminal acts of treason and may be engaged in extortion and the interference with interstate commerce."*

On *May 9, 2016*, Appellant out of ignorance of how the court operates and the normal mechanics of the court's system, added to her suit and served Breitburn Entities and multiple other parties to the suit, even though Appellant's granted Motion to Lift Abatement showed compliance with the court's order and even though the court lacked subject matter jurisdiction over any new parties added or served concerning Appellant's suit; including Breitburn Entities.

On *August 17, 2016* Appellant filed an Adversary (Cause #16-01198) the Southern District of New York Bankruptcy court. Appellant filed an adversary claim, because the Bankruptcy Court held jurisdiction over Breitburn Entities and Appellant had experienced unethical judicial behavior in the Gregg County, Texas Court. *(Exhibit-F, Adversary)*

On *September 2, 2016* at a hearing, the Appellees moved to dismiss Appellant's Texas suit based non-compliance of the court's order concerning Rule 39, even though Judge Vincent Dulweber had already acknowledged Pierce's compliance to his November 12, 2016 Order on Plea in Abatement which cited Rule 39 through his March 4th order to lift the abatement, which was judicially unethical. *(Exhibit-G, Defendant's Motion to Dismiss)*

On *October 13, 2016* Judge Vincent Dulweber (an officer of the court) *without*

*hearing the merits* of Appellant's suit, and without jurisdiction (due to fraud upon the court) dismissed Pierce's suit with prejudice with no regard to signing an order granting Appellant's Motion to Lift Abatement which showed her compliance with his **November 12, 2018** order and *Rule 39.* Judge Vincent Dulweber *lacked jurisdiction* to enter any judgment which would contradict orders entered in the court. Judge Dulweber ignored Pierce's compliance with the Order on Plea in Abatement and Rule 39 which would allow Appellant to reach the merits of her suit, which in turn violated the courts flexibility to be fair and just, limiting the court's ability to function as laws proscribe, and also making the judgment entered void. *(Exhibit-H, TX-Judgment)*

*"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated, "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."* <u>*"Void judgment is one where*</u> <u>*court lacked personal or subject matter jurisdiction or entry of order violated*</u>

*due process*, U.S.C.A. Const. Amend. 5 – *Triad Energy Cop. v. McNell 110 F.R.D. 382 (S.D.N.Y. 1986)*

On *March 17, 2017* Judge Stuart Bernstein dismissed Appellant's suit due to claims of res judicata based on the Texas judge's decision. The Final Judgment entered by this officer of the court in Texas caused a false indication of res judicata by a judgment which was void by law due to fraud upon the court. *(Exhibit-I, NY-Judgment)*

*Res judicata consequences will not be applied to a void judgment which is one which from its inception is a complete nullity and without legal effect, Allcock v. Allcock 437 N.E. 2d 392 (Ill. App. 3 Dist. 1982). Void judgment is one entered by court that lacks the inherent power to make or enter the particular order involved, and it may be attacked at any time, either directly or collaterally; such a judgment would be a nullity,* People v. Rolland 581 N.E.2d 907, Ill.App. 4 Dist. 1991).

On *December 22, 2017* while still within the statute of limitations, Appellant filed a Motion to Vacate Judgment Due to Fraud Upon the Court (Doc. #30). Appellant wanted to show the Southern District of New York Bankruptcy Court that information which was entered in the court was based on fraud

upon the court in the Texas suit and that the Texas Judgment which caused a res judicate effect on Appellant's suit. *(Exhibit-J, Motion Doc. #30)*

On *January 3, 2018*, Judge Stuart Bernstein ordered that cause #16-01198 be reopened. To hear the motion, Judge Bernstein allowed both the Appellant and the Appellees opportunity to reply to responses entered concerning the motion (Doc. #30). *(Exhibit-K, Order to re-open)*

On *May 7, 2018* Judge Bernstein denied Appellant's Motion to Vacate Judgment Due to Fraud Upon the Court and reclosed Appellant's adversary case #16-01198. The court erred and interpreting that Appellant sought the Bankruptcy Court set aside the Texas court's void judgment, but instead, Appellant was requesting through her December 22, 2018 motion for Judge Bernstein to vacate his own judgment which dismissed Appellant's adversary based on res judicata due to fraud upon the Texas court. The Bankruptcy Court adopted fraud upon the court after acknowledging the void Texas judgement entered in Appellant's adversary proceeding (cause #16-01198) by Appellee's legal counsel.   *(Exhibit-L, Order Re-close Case)*

Fraud on the Court

As stated by Judge Bernstein who presided over Pierce's adversary claim,

"Fraud on the court' encompasses conduct which represents an attempt to

defile the court itself, or a fraud perpetrated by officers of the court so that

the judicial machinery cannot perform its impartial task of judging cases."

Gazes v. DelPrete (In re Clinton Street Food Corp.), 254 B.R. 523, 532

(Bankr. S.D.N.Y. 2000); accord Armatas v. Maroulleti, 690 F. App'x 731,

732 (2d Cir. 2017) (summary order) (quoting Hadges v. Yonkers Racing

Corp., 48 F.3d 1320, 1325 (2d Cir.1995). "'[F]raud upon the court' as

distinguished from fraud on an adverse party is limited to fraud which

seriously affects the integrity of the normal process of adjudication."

Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988); accord Linkco, Inc.

v. Akikusa, 367 F. App'x 180, 182 (2d Cir.) (summary order), cert. denied,

562 U.S. 833 (2010). A party seeking to vacate a judgment for fraud on the

court must show, by clear and convincing evidence, "that a party has

sentiently set in motion some unconscionable scheme calculated to interfere

with the judicial system's ability impartially to adjudicate a matter by ...

unfairly hampering the resentation of the opposing party's claim or defense."

McMunn v. Mem'l Sloan–Kettering Cancer Ctr., 191 F.Supp.2d 440, 445

(S.D.N.Y.2002) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118

(1st Cir.1989); see also Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010). A claim of fraud on the court must be made in the court that was allegedly defrauded. O'Neill v. Hernandez, No. 08 Civ. 1689 (KMW), 2010 WL 1257512, at *14 (S.D.N.Y. Mar. 25, 2010); Pandozy v. Segan, 518 F. Supp. 2d 550, 555 (S.D.N.Y. 2007), aff'd, 340 F. App'x 723 (2d Cir. 2009); Wagner Spray Tech Corp. v. Wolf, 113 F.R.D. 50, 52 (S.D.N.Y. 1986); Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). Appellant made her claim in the court which was defrauded, Southern District of New York Bankruptcy Court was defrauded by the void Texas judgment which was entered in cause #16-01198 by Appellee's legal counsel who are also officers of the court. That said, Judge Bernstein had the authority and jurisdiction to vacate his own judgment based on the facts given to him in the hearing on Appellant's motion (Doc. #30) to protect the innocence of his court. For this reason, Judge Bernstein's judgment should have been vacated to allow law to operate as it was made to do in the name of justice. Appellant's motion should've been granted to allow the merits of the suit to be heard in the court which held true jurisdiction of Breitburn Entities, because Texas court lacked that jurisdiction due to fraud on the court.

CONCLUSION

Pierce has attempted to show the Southern District of New York Bankruptcy Court that fraud on the court exists in the court. The Texas Judge was deprived of jurisdiction not when Breitburn Entities filed for Chapter 11 Bankruptcy on May 15, 2016, but instead the Texas court lost jurisdiction when Judge Vincent Dulweber prevented the Texas court from acting in its normal judicial machinery as proscribed by law. The Texas court lost jurisdiction after ordering Pierce to serve parties who would be potentially affected by her suit as stated in Rule 39, and after Appellant complied by the November 12, 2016 Order on Plea in Abatement which cited that rule, Judge Dulweber dismissed Appellant's suit with prejudice, causing Judge Bernstein to blindly follow and abide by Texas court's dismissal, and causing Judge Bernstein to dismiss Appellant's suit (#16-01198) where fraud on the court existed. These are the reasons Appellant ("Pierce") filed for appeal on Judge Bernstein's order denying Appellant's Motion to Vacate Judgment Due to Fraud Upon The Court and shows reasons why his decision should be reversed.

*Chief Justice John Marshall acknowledged that a court may grant relief from judgment where a new matter "clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself before judgment. Marine Ins. Co. of Alexandria v. Hodgson, 11 U.S. (7 Cranch) 332, 336 (1813). He further emphasized that an Article III court can grant relief where the "equity of the applicant [is] free from doubt," and where a judgment "would be against conscience for the person who has obtained it to avail himself." Id. at 337 (emphasis supplied).*

## PRAYER

WHEREFORE, Appellant prays that this court acknowledges that Judge Bernstein erred in denying Appellant's Motion to Vacate Judgment Due to Fraud Upon The Court.

WHEREFORE, Appellant prays that this court recognizes that Appellant moved for Southern District of New York Bankruptcy court to vacate its own judgment due to fraud on the court caused by Texas court.

WHEREFORE, Appellant prays that this court is really "for the people" and does not operate to satisfy the unjust.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4242 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the typestyle requirements of Fed. R. App. P. 32(a)(6), and the form requirements of Fed. R. App. P. 32(c)(2), because the brief has been prepared using Microsoft Word 2010 in 14-point Times New Roman font.

Respectfully submitted,

_____

Felicia Pierce (Pro Se)

3708 Bluff Creek, Lane

McKinney, Texas 75071

PH: (972) 876-9718

PH: (469) 734-2855

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been

sent by electronic mail to all parties connected with this adversary complaint on

July 26, 2018 in accordance with Federal Rule of Civil Procedure.


_____
Felicia Pierce


**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Appellees**
**767 Fifth Avenue**
**New York, New York 10153**
**Ray C. Schrock, P.C. Esq.**
**Stephen Karotkin, Esq.**
**Edward Soto, Esq.**
**Of Counsel**

# EXHIBIT A

2015-1679-CC2

FILED
GREGG COUNTY, TEXAS

| | | |
|---|---|---|
| ALICE BARRYER LYNCH | § | IN THE DISTRICT COURT   SEP 1 0 2015 |
| FELICIA PIERCE POWER OF ATTORNEY | § | 2:43  O'CLOCK   P   M |
| Plaintiff | § | BARBARA DUNCAN, DISTRICT CLERK |
| | § | BY _____ DEPUTY |
| | § | |
| HEIRS OF A.A. KING AND LOTTIE KING ET AL | § | GREGG COUNTY, TEXAS |
| C/O ATTORNEY DON WESTBROOK | § | |
| Defendant | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION FOR QUIET TITLE AND APPLICATION FOR DECARTATORY JUDGMENT AND TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

Plaintiff Alice Barryer Lynch heir of Lettuce Beall, Nathan Howell c/o Felicia Pierce files this Original Petition for Civil Judgment and application for Temporary Restraining Order and Temporary and Permanent Injunction against Defendant Heirs of A.A. King et al c/o Don Westbrook would respectfully show the court as follows:

I.

### STATEMENT OF CLAIM

This lawsuit relates to property ownership, Felicia Pierce seeks declaratory judgment recognizing its complete ownership of and right to determine the use and control of those assets and properties held by the heirs of Lettuce Beall Oliver and Emily Oliver Nathan Howell, free of any claimed trust interest of any kind in favor of heirs of Lettuce Beall. Felicia Pierce further seeks a temporary restraining order and temporary injunction to preserve the rightful owners through heirship. Absent such injunctive relief keeps the heirs of A.A. King and Lottie King et al from receiving said land located in P.W Warraner Survey and all oil and gas royalties. For this reason, Felicia Pierce seeks to restrain the heirs of A.A King and any of its agents or representatives from taking any action that would alter or continue to abrupt the property rights of we the heirs of Lettuce Beall Frazier and Nathaniel Howell as they now stand and as determined by this court.

### Parties

Plaintiff Alice Barryer Lynch c/o Felicia Pierce heirs to Lettuce Beall Oliver and daughter Emily Oliver owners of the P.W. Warraner Survey in Longview, Texas in Gregg County.

Defendant heirs of A.A. King and Lottie King c/o Don Westbrook, who can be served with citation at 1127 Judson Rd Suite #211 Longview, Texas 75606.

2015-1679-CC2

# EXHIBIT B

Electronically Submitted
11/12/2015 3:18:11 PM
Gregg County District Clerk
By: Debbie Kinney ,deputy



# Vincent L. Dulweber, Judge
## County Court at Law No. 2
## Gregg County, Texas

**Sheryl A. Bowen**
**Official Court Reporter**
sheryl.bowen@co.gregg.tx.us

**Wendy Ligon**
**Court Coordinator**
wendy.ligon@co.gregg.tx.us

101 E. Methvin St., Suite 303
Longview, Texas 75601

Phone 903.234.3110
Fax 903.234.3112

November 12, 2015

Ms. Felicia Pierce
Pro Se
9764 Water Tree Road
McKinney, TX 75070

Mr. J. Don Westbrook
Attorney at Law
P.O. Box 2665
Longview, TX 75606

Re:   Felicia Pierce vs. Lottie Guttry; Cause No: 2015-1679-CCL2
      Ruling on Plea in Abatement & Special Exception

Ms. Pierce and Mr. Westbrook:

**Matters Considered by the Court**
The Court has made a careful review of the Court's file, Plea in Abatement and Special Exception filed on behalf of Defendant, Lottie Guttry ("Defendant"), the Responses thereto filed on behalf of Plaintiff, Felicia Pierce, ("Plaintiff"), together with the arguments of the parties provided at the hearing on November 6, 2015, and sets forth its rulings.

**Scope of Plea in Abatement**
Defendant asserts an Abatement of the proceedings due to alleged Pleading defects in Plaintiff's First Amended Petition. In particular, Defendant asserts a Plea in Abatement for the reason: 1) that Plaintiff has failed to identify in her Pleadings the undivided interest she owns in the subject real property; 2) that Plaintiff has failed to identify as defendants all those persons who would be adversely affected by a ruling in favor of Plaintiff; and, 3) to the extent Plaintiff is seeking a claim for Injunctive Relief, that Plaintiff has failed to identify as plaintiffs all the persons Plaintiff contends owns 100% of the subject real property.

Ms. Felicia Pierce
Mr. J. Don Westbrook
November 12, 2015
Page 2

**Overview of Plaintiff's Amended Petition**

Plaintiff, Felicia Pierce, personally asserts title to approximately 320 acres in the P.W. Warraner Survey, Gregg County, Texas ("subject real property") as an heir of Lettuce Beall who passed in approximately 1909.  By this lawsuit, Plaintiff "seeks declaratory judgment recognizing its complete ownership of and right to determine the use and control of those assets and properties held by the heirs of Lettuce Beal Oliver and Nathan Howell, free of any claimed trust interest of any kind in favor of heir of Lettuce Beall."   Plaintiff further seeks injunctive relief "to restrain the heirs of A.A. King and any of it's (sic) agents or representatives from taking any action that would alter or continue to abrupt the property rights of we the heirs of Lettuce Beall Frazier and Nathaniel Howell as they now stand and as determined by this court."

**Identity of Plaintiff's Undivided Ownership Interest**

Plaintiff asserts title to the subject real property as an "heir of Lettuce Beall".  During the hearing on Defendant's Plea in Abatement, Plaintiff identified the undivided interest Plaintiff claims in the 320 acres.  The Court finds that Plaintiff is required to further amend her Petition to affirmatively plead her undivided interest in the subject real property.

**Persons Who Would Be Adversely Affected Necessary Parties**

Plaintiff asserts both a claim for Declaratory Judgment "concerning ownership and control of P.W. Warraner Survey, all property held by the heirs of Lettuce Beall Frazier and Emily Oliver or title in it's (sic) name," and a Suit to Quiet Title in the "heirs of Lettuce Beall Frazier and Emily Oliver" relating to 320 acres located in the P.W. Warraner Survey, Gregg County, Texas. The basis of the claim is an allegation of failure of adverse possession title in A. A. King.  The Court finds that all persons currently claiming an interest in the subject real property would be adversely affected by a Judgment in favor of Plaintiff on either claim and are necessary parties to this Cause.  Tex. R. Civ. P.  39; Tex. Civ. Prac. & Rem. Code §37.002(b); *Longoria v. Exxon Mobil Corp.*, 255 S.W. 174 (Tex.App-San Antonio 2008, pet. denied).

**Identity of all Alleged Interest Owners as to Claim for Injunctive Relief**

At this time, the Court is not ruling on Defendant's Special Exception as to any requirement to identify all alleged interest owners in the property in order for Plaintiff to pursue Injunctive Relief.

**Scope of Plaintiff's Claim Limited to Plaintiff's Undivided Interest**

Plaintiff asserts title to the subject real property as an "heir of Lettuce Beall", holding only an undivided interest.  Plaintiff further "seeks declaratory judgment recognizing its complete ownership of and right to determine the use and control of those assets and properties held by the heirs of Lettuce Beal Oliver and Nathan Howell, free of any claimed trust interest of any kind in favor of heir of Lettuce Beall."   Plaintiff identifies this claim as a Suit to Quiet Title in the "heirs of Lettuce Beall Frazier and Emily Oliver" relating to 320 acres located in the P.W. Warraner Survey, Gregg County, Texas, and further relies on the Declaratory Judgment Act to obtain this remedy.  However, the Texas Supreme Court has held that a Trespass to Try Title claim is the exclusive remedy for determining title to lands, tenements or other real property.

Ms. Felicia Pierce
Mr. J. Don Westbrook
November 12, 2015
Page 3

*Rogers v. Ricane Enters, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994) *citing* Texas Property Code §22.001.  A Trespass to Try Title may be pursued by a plaintiff holding only an undivided interest.  *Taylor v. Catalon*, 140 Tex. 38, 166 S.W. 2d 102 (Tex. 1942)(*each cotenant is separately seized*).  However, any judgment entered on Plaintiff's claim to establish title would be necessarily limited to the alleged undivided interest (2.17%) held by the sole Plaintiff before the Court.  In order to establish the title to all the "heirs of Lettuce Beall Frazier and Emily Oliver" in the 320 acres in question, as pled by Plaintiff, it would be necessary that all of said individual heirs be joined voluntarily or involuntarily as plaintiffs in this Cause.

**Lis Pendens**
Plaintiff acknowledged that Plaintiff has filed a Lis Pendens in the Deed Records of Gregg County, Texas relating to this Cause.  As pled, Plaintiff seeks to disrupt the "established title" to 320 acres located in the P.W. Warraner Survey, Gregg County, Texas, when, in fact, the current state of the pleadings only address an undivided 2.17% interest held by Plaintiff as against Defendant, Lottie Guttry, being an individual that apparently never held any legal title to the subject real property.  Nevertheless, such a Lis Pendens will serve to cloud title to the 320 acres in question.

**Plea in Abatement Granted**
**First:** The Court is granting Defendant's Plea in Abatement as to the requirement that Plaintiff amend her written pleadings to specifically identify her alleged undivided interest in the 320 acres located in the P.W. Warraner Survey, Gregg County, Texas.  **Second:** The Court is granting Defendant's Plea in Abatement as to the requirement that Plaintiff join as Defendants in this Cause all persons currently holding an interest in the 320 acres located in the P.W. Warraner Survey, Gregg County, Texas.  **Third:** This Cause shall be Abated for Ninety (90) days from the date of this Court's Order to afford Plaintiff an opportunity to amend her pleadings in accordance with this Court's Order.  In the event Plaintiff fails to amend her Petition in accordance with the Court's Order within the Ninety (90) day period, this Court will entertain a Motion to Dismiss this Cause.  **Fourth:** In the event Plaintiff removes the Lis Pendens within Ninety (90) days of this Court's Order, the Court will extend the Abatement for up to Twelve (12) months from the date of this Court's Order to afford Plaintiff an opportunity to amend her pleadings in accordance with the Court's Order.  In the event Plaintiff fails to amend her Petition in accordance with the Court's Order within the Twelve (12) months, this Court will entertain a Motion to Dismiss.

Sincerely,

Vincent L. Dulweber,
Presiding Judge

# EXHIBIT C

Electronically Submitted
11-12-2015 3:46 AM
Gregg County District Clerk
By: Debbie Kinney ,deputy

## CAUSE NO. 2015-1679-CCL2

| | | |
|---|---|---|
| FELICIA PIERCE | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW |
| | § | |
| LOTTIE GUTTRY | § | GREGG COUNTY, TEXAS |

### ORDER ON PLEA IN ABATEMENT

On this day came on to be considered Defendant's Plea in Abatement. The Court, after considering the Motion and argument of Plaintiff and Defendant's counsel, finds that Plaintiff has failed to identify her claimed interest in the real property made the subject of this Cause; that Plaintiff has failed to identify and make a party to this Cause those persons potentially adversely affected by a judgment in favor of Plaintiff this Cause; that those persons potentially adversely affected by a judgment in favor of Plaintiff are necessary and indispensible parties to this Cause; and, that the Plea in Abatement should be GRANTED.

IT IS THEREFORE ORDERED,

That Plaintiff's suit is abated until Plaintiff properly re-pleads in conformance with the applicable rules of civil procedure, by showing how Plaintiff has a claim of ownership in the real property made the basis of this lawsuit, including the amount of undivided interest Plaintiff claims to own in Plaintiff's individual capacity. Plaintiff must properly re-plead within Ninety (90) days of the date of this Order. In the event Plaintiff does not re-plead in conformance with the applicable rules of civil procedure within Ninety (90) days of the date of this Order, this Cause shall be subject to being Dismissed;

That Plaintiff's suit is abated until Plaintiff properly re-pleads in conformance with the applicable rules of civil procedure, naming each and every potential owner potentially adversely affected by the declaratory judgment or suit to quiet title claim, including surface owners, oil, gas and mineral owners, royalty owners, overriding royalty interest owners, lessees of the mineral estate, working interest owners, pipeline right of way easement owners, surface lessees, or any other individuals or entities potentially affected by Plaintiff's claims. Plaintiff must properly re-plead within Ninety (90) days of the date of this Order. In the event Plaintiff does not re-plead in conformance with the applicable rules of civil procedure within Ninety (90) days of the date of this Order, this Cause shall be subject to being Dismissed.

Should Plaintiff release the Lis Pendens filed in the Official Public Records of Gregg County, Texas referencing this Cause within Ninety (90) days of the date of this Order, this Cause shall be, instead, abated for a period of up to Twelve (12) months from the date of this Order to afford Plaintiff an opportunity to re-plead in accordance with the Court's Order.  If Plaintiff does not re-plead in accordance with the Court's Order within Twelve (12) months of the date of this Order, this Cause shall be subject to being Dismissed.

Signed this 12th day of November, 2015.

_____

JUDGE PRESIDING

# EXHIBIT D

FILED
GREGG COUNTY, TEXAS

JAN 25 2016

**CASE NO. 2015-1679-CCL2**

4:29 O'CLOCK P M
BARBARA DUNN, DISTRICT CLERK
BY _____ DEPUTY

| | | |
|---|---|---|
| **PLAINTIFF** | § | IN THE DISTRICT COURT |
| FELICIA PIERCE | § | |
| | § | |
| **INVOLUNTARY PLAINTIFFS** | § | |
| WILLIAM BARRYER JR., JENNIFER BARRYER | § | |
| CAROLYN J. LEE, JOYCE A. DAVIS, | § | |
| ROBERT BARRYER, CALVIN BARRYER, | § | |
| CYRANO BARRYER, PAULINE HICKS, | § | |
| ANNIE MAE JONES, VANESSA BARRYER | § | GREGG COUNTY, TEXAS |
| EDNA GREENWOOD, JOE C. BARRYER | § | |
| AUTHUR J. BARRYER, CEDRIC BARRYER, | § | |
| KHAVEO BARRYER JR., ARMATHA BANKS, | § | |
| THELMA CARR, SHIRLEY JOHNSON | § | |
| JAMES JOHNSON, LINDA G. SMITH, | § | |
| PAULA BARRYER, VERNELL CHEATHAM | § | |
| | § | |
| | § | |
| **DEFENDANTS** | § | CAUSE NO. 2015-1679-CCL2 |
| DEBBIE BLALACK, ANDREW RILEY, | § | |
| EAST TEXAS SALT WATER DISPOSAL CO., | § | |
| BRUCE A. BROYLES SR, JAMES C. PEE, | § | |
| RICKY DAVIS, CITI FINANCIAL | § | |

## MOTION TO LIFT ABATEMENT

**THIS CAUSE** having come before the court upon the Voluntary and Involuntary Plaintiffs ,Gregg County Texas Motion to Lift Abatement, and the court has advised the plaintiffs in Cause 2015-1679-CCL2 to comply with the order and letter from Judge Dulweber dated November 12th 2015. Justification within this Motion will state the facts that the actions were implemented to abided by the courts order and those compliances are as follows:

**451**

I, Felicia Pierce the named Plaintiff in Cause No. 2015-1679-CCL2, was ordered under a Plea In Abatement to comply to that certain Order and Letter Ruling explaining in detail that particular order on Plea In Abatement and Special Exceptions which was submitted on November 12th 2015 as follows:

### PARAGRAPH  IV (Identity of Plaintiff's Undivided Ownership Interest)

1. I the named Plaintiff have amended the petition to show that my interest was acquired by a Temporary Interest transfer affidavit from my mother and a direct heir of Harriet Alford the eldest daughter of Lettuce Beall Oliver, Alice Barryer Lynch. This document has been added to the court case files through e-file.

2. My interest has been corrected from 2.17% to 4.35% interest in the property.

### PARAGRAPH V (Person Who Would Be Adversely Affected Necessary Parties)

1. Declaratory and Quiet Title, both have been removed from the petition
   **Declaratory Procedure (Parties)** – The petition should name as parties all persons or entities that have a claim or interest that would be affected by the declaration. CPRC §37.006(a); Musgrave v. Owen, 67 S.W.3d 513, 521 (Tex.App.-Texarkana 2002, no pet.)

2. Correction was made in the Seventh Amended Petition to show that I am a descendant of Harriet Alford the eldest daughter of Lettuce Beall Oliver, not Emily Oliver who was her youngest daughter.

3. My plea has been amended and no longer reflects a Declaratory Judgment claim which the Court finds that all persons currently claiming an interest in the subject real property under the Declaratory Judgment would be adversely affected by a Judgment in favor of Plaintiff on either claim or necessary parties to this Cause. *(Tex. R. Civ.P . 39)*. **TRCP 161** states under *Abatements and Discontinuance of Suit:* When some of the several defendants in a suit are served with process in due time and others are not so served, the plaintiff may either dismiss as to those not so served and proceed against those who are, or he may take new process against those not served, or may obtain severance of the case as between those served and those not served, but no dismissal shall be allowed as to a principal obligor without also dismissing the parties secondarily liable except in cases provided by statue. No defendant against whom any suit may be so dismissed shall be thereby exonerated from any liability, but may at any time be proceeded against as if no such suit had been brought and no such dismissal ordered (*see Gideon v. Williams, Tex 1954.*) In this case of TRCP 161, all defendants in possession of the top surface of real property have been served, and a Motion to Sever has been submitted for those not served

**452**

and due to Lottie Guttry not being able to be sued in her individual capacity and holding no privity to the other defendants or this cause; a Motion to Dismiss Mrs. Guttry with prejudice has been submitted to the court which is now under review.

<u>PARAGRAPH VI (Identity of all alleged Interest Owners as to Claim for Injunctive Relief</u>

1. The court did not make a ruling on Defendant's Special Exception.

<u>PARAGRAPH VII (Scope of Plaintiff's Claim Limited to Plaintiff's undivided Interest)</u>

1. My petition as plaintiff was amended; changed from Quiet Title to Trespass to Try Title which is shown to be proper for lands, tenements or other real property.
2. I added all other heirs of Harriet Alford, daughter of Lettuce Beall Oliver as Involuntary Plaintiffs as stated in paragraph seven (7) of Judge Dulweber's Letter Ruling for Plea In Abatement. There are 22 heirs added with a total of 23 heirs (including my interest) @ 4.35% interests equaling 100% total interest.


<u>PARAGRAPH VIII (Lis Pendens)</u>

1. Paragraph eight (8) states that the prior interest stated of 2.17% which has been corrected to reflect 4.35% interest was not enough to file a lis pendens in the deed records of the County Clerks office, and it also states that Lottie Guttry has never been in possession of the property described in the lis Pendens. Taking into consideration Judge Dulweber's concern of the reasons the lis pendens was filed in an improper form, I have since then corrected the lis pendens to reflect 100% interest by including all 23 of the heirs as plaintiff and involuntary plaintiffs. The lis pendens has also been corrected with all defendants pertaining to the top surface estate in question which is situated in the P.W. Warrener survey in Gregg County, Texas consisting of 366.7 acres more or less. These corrections or amendments will put this lis pendens in its proper form.

<u>PARAGRAPH VIIII (Plea In Abatement Granted)</u>
- **First** (ruling): Refer to Paragraph IV within this document.
- **Second** (ruling): Refer to Paragraph V within this document; TRCP 161

**453**

- **Third** (ruling): The Cause is abated for 90 days from the date of the Courts order (11/12/2016). All compliances herein stated will have already been made by the time of the execution of this document and before the 90 day deadline (February 12, 2016).
- **Fourth** (ruling): Judge Dulweber states that he will give me, Felicia Pierce, the plaintiff 12 months to comply if I remove the Lis Pendens. Removing the lis pendens for any reason from this cause will be a risk and could be burdensome protecting our family's title and may cause extended or multiple litigations or lawsuits. For instance John Coon a previous possessor of the property in question sold 2.5 acres more or less on November 30th 2015 of the property to James C. Pee, who has been made a defendant to this cause. This transaction was made while the notice of lis pendens was still in place. To remove the notice of lis pendens may cause more damages to and/or clouds on our title. Our rights as a title holder is to defend our property, and to remove the lis pendens may invade that right.

This Motion to Lift Abatement shows compliance  with Judge Dulweber's order, in prayer to lift the abatement and proceed with the continuance of this Cause No. 2015-1679-CCL2.

Dated: 1/25/2016
Respectfully Submitted,

PRO SE,

Pro Se Plaintiff
Felicia Pierce\
9764 Water Tree Dr.
McKinney, Texas 75070

**454**

# EXHIBIT G

# EXHIBIT E

CAUSE NO. 2015-1679-CCL2

FILED
GREGG COUNTY, TEXAS

MAR 0 4 2016

9:06 O'CLOCK ___ ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY: ___ ___ DEPUTY

| | | |
|---|---|---|
| FELICIA PIERCE | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW |
| | § | |
| DEBBIE BLALOCK, ET AL | § | GREGG COUNTY, TEXAS |

## ORDER LIFTING ABATEMENT

On this day came on to be considered Plaintiff's Motion to Lift Abatement. The Court, after considering the Motion of Plaintiff and the Court's file, finds that the Abatement of this Cause should be LIFTED.

IT IS THEREFORE ORDERED, that the Abatement of this Cause by Order dated November 12, 2015, is hereby LIFTED.

IT IS FURTHER ORDERED that the Clerk of this Court shall reinstate this Cause on the Court's Docket.

Signed: __MAR 0 4 2016__ .

JUDGE PRESIDING

**705**

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:

       Breitburn Energy LP., Entities,             Chapter 11
                                  Case No. 16-11390-(SMB)
          Debtor.

------------------------------------------------------X

Felicia Pierce (pro se)

       Plaintiff,

      -- against –

United States Trustee,

Susan D. Golden, Esq

Richard C. Morrissey, Esq, etal

       Defendants.

------------------------------------------------------X

Office of the United States Trustee

## MEMORANDUM IN SUPPORT OFPLAINTIFF'S ADVERSARY COMPLAINT FOR PRELIMINARY INJUNCTION RELIEF AND DISCHARGABLITY FOR BANKRUPTCY FRAUDPURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(a)

Defendant Breitburn Energy Partners, LP is currently performing drilling activity on P.W. Warraner Survey Gregg County, Texas, a highly disputed tract of land. Breitburn's entered upon the Property without the consent of the lawful owner. Breitburn's activity has and continues to remove valuable oil and gas minerals from Plaintiff's Property without any compensation therefor.

1

## BACKGROUND

Prior to bankruptcy filing, Breitburn Energy Partners LP, and entities received an Oil and Gas lease assignment from Danmark East Texas Field LP in 02/21/2012. Breitburn Operating LP., is in charge of Operations and payout, while QRE Operating LLC., hold 100% working Interests while doing business on P.W. Warraner Survey in Gregg County, Texas.

Breitburn's operations on the Property are based upon the 1921 Affidavit of Adverse Possession which failed to properly divest the legal owner of title.

**Chain of Title**

The Property located at P.W. Warrener Survey in Gregg County is very valuable and has proven to be some of the most oil rich land in the country. And over the years, numerous attempts have been made to swindle, defraud, steal, and outright take the property from its legal African American owners.

In 1931, A.A. King, a County Sherriff, violated Plaintiff's 5th and 14th Amendment rights when he forced Plaintiff's family from the property of P.W. Warraner Survey, which served as Plaintiff's Homestead since 1867.

Chain of title is as follows:

1.         According to Rusk County Deed Records, on or about 03-04-1844, a Land Patent was established for Phanael W. Warraner ("P.W. Warraner") (Exhibit AA).

2.         According to Deed of Trust, on or about 2-22-1867, P.W. Warraner sold 320 acres to James R. Oliver at land mentioned above.[1]  According to Deed of Trust, (Exhibit A) on or about 12-18-1869, James R. Oliver also purchased land from S.S. Barnett also located at P.W. Warraner Survey of 120 acres more or less.[2] (Exhibit A) The two aforementioned deeds above granted to James R. Oliver, and duly recorded, establish fee simple title under Texas law in

---

[1] Deed of Trust, Vol. S, Pg. 302, Deed Records, Rusk County, Texas
[2] Deed of Trust, Vol. S, Pg. 301, Deed Records, Rusk County, Texas.

2

James R. Oliver as the true bona fide owner of 440 acres more or less of said land located at P.W. Warraner Survey.

3.        On or about 02-14-1870, James R. Oliver created a will, which, upon his death, was duly probated to bequeath all real and personal property he owned to his wife Lettuce Beall Oliver and daughter Emily Oliver. S.S. Barnett was designated as the executor of the will and Nathaniel Howell (Lettuce's father) was listed as a witness. (Exhibit B).[3]  The probated will gave Lettuce Beall Oliver and Emily Oliver rightful ownership of all property purchased by James R. Oliver out of the P.W. Warraner.

4.        On 09-02-1872, S.S. Barnett, executor of James R. Oliver's estate sold 30 acers from part of James R. Oliver estate situated in the P.W. Warraner Survey to pay off James R. Oliver's debts which left 366.7 acres more or less. (Exhibit C)[4]

5.        On or about 03-15-1876, Emily Oliver placed a lien on the homestead of her mother, Lettuce Beall Oliver, to secure a loan of $210.00. (Exhibit D)

6.        On or about 04-10-1876, C.B. Kilgore purported to execute a judgment supposedly rendered against Lettuce Beall Oliver (now Frazier) and C.H. Frazier for $57.25 in gold and $6.65 in cash.  Despite the fact that no record of an actual judgment existed in the Gregg County Clerk's records, James Dillingham executed the non-existent "judgment". (Exhibit E)[5]

7.        The Homestead Act which dates back to Stephen F. Austin, Code of Civil Regulations in 1824 states that no one can take a homestead away due to a judgment, no matter if it's valid or not.[6] The Homestead Act also states that it protects the minerals if they are un-

---

[3] Deed of Trust, Vol. M, Pg. 89 of Deed Records, Rusk County, Texas.
[4] Deed of Trust, Vol. T, Pg. 764- 766, Deed Records, Rusk County, Texas.
[5] Deed of Trust, Book C, Pg. 288-289 Deed Records, Gregg County, Texas.
[6] Texas Property Code, Section 41.01, et seq.

3

severed prior to any claim in 1939.[7] Texas offers unique protections for residents that should be integrated into any asset protection plan. These "homestead protections" are contained principally in the Texas Constitution Article XVI, Section 50[8] and in Texas Property Code Chapters 41 and 42.[9] They apply to both income and assets. The homestead is the crown jewel of exemptions. It is protected from forced sale for purposes of paying debts and judgments *except* in cases of purchase money, taxes (both ad valorem and federal tax liens against both spouses), owelty of partition (divorce), home improvement loans, home equity loans, reverse mortgages, liens pre- dating the establishment of homestead, refinance loans, or the conversion or refinance of a lien on a mobile home that is attached to the homestead. Other liens are void. No matter how much the home is worth, an ordinary judgment creditor cannot force its sale in the absence of fraud.[10] Texas homestead laws are liberally construed by the courts.[11]

8.        On or about 6-06-1876, the P.W. Warraner Survey was sold at the court house steps to satisfy the non-existent judgment.  The highest bidder was C.B. Kilgore in the amount of $35.00.   J.C. Johnson (constable) deeded the property to C.B Kilgore. (Exhibit E)[12]   This purported transfer of title occurred without the consent of the rightful owners and did not effectively convey title.

9.        On or about 06-21-1876, C.B. Kilgore transferred the invalid deed obtained in the transaction above to V.H. Kilgore for $350.00 (Exhibit F)[13]

10.        On or about 07-22-1876, V.H. Kilgore filed Court case #186, to take Lettuce Beall Frazier and C.H. Frazier to court to enforce the deed he purchased from C.B. Kilgore in the

---

[7] *Gulf Production Co. v. Continental Oil Co.*, 132 S.W.2d 553 (1939).
[8] Texas Constitution Article XVI, Section 50
[9] Texas Property Code, Chapters 41-42.
[10] *See In re McCombs*, 659 F.3d 503, 507 (5th Cir. 2011).
[11] *London v. London*, 342 S.W.3d 768, 776 (Tex. App.–Houston [14th Dist.] 2011, no pet.).
[12] Deed of Trust, Book C, Pg.288-289, Deed Records, Gregg County, Texas.
[13] Deed of Trust, Book C, Pg. 286-287 Deed Records, Gregg County, Texas.

4

transaction above. On or about 01-29-1877, Court case continues with lawyers present to amend lien. On or about 02-14-1878 the Court decided the case in favor of Lettuce Beall Oliver Frazier and C.H. Frazier. V.H. Oliver took no ownership from said property at P.W. Warraner Survey. The ownership and property stayed in the possession of Lettuce Beall Frazier and her husband (Exhibit G)[14]

11.     On or about 02-14-1878, the same day that V.H. Kilgore lost the property in court, he transferred the invalid deed to J.W. Bradshaw for the sum of $110.00. (Exhibit H).[15]

12.     On or about 07-18-1881 J.W. Bradshaw filed court case #287 to claim possession of the Property. Bradshaw lost in court and covered all court cost. The property once again stayed in the rightful ownership of Lettuce Beall Frazier and her husband. (Exhibit I).[16]

13.     On or about 01-27-1882 J.W. Bradshaw once again took Lettuce Beall Frazier and father Nathaniel Howard (Howell) et al to court in Court case #335.

The case was resolved on or about 11-19-1883 J.W. Bradshaw lost his case and took nothing from the suit and was ordered to pay all court costs. When the court researched the property located at P.W. Warraner they found that the said land in questioned belongs to the rightful owners of Lettuce Beall Frazier and Emily Oliver due to it being their Homestead. The Homestead Act also protected Lettuce Beall Frazier and Emily Oliver's un-severed assets. (Exhibit J).[17]

14.     The property remained in Lettuce Beall's possession for more than 30 years until her death. The court ruled numerous times that the rightful legal owners of the Property were Lettuce Beall Frazier and daughter Emily Oliver by means of Homestead Act, and probated Will

---

[14] Minutes Book A, Pg. 550, Minutes District Court, Gregg County, Texas.
[15] Deed of Trust, Book E, Pg. 263-264, Deed Records, Gregg County, Texas
[16] Minutes Book C, Pg. 142) Minutes District Court, Gregg County, Texas.
[17] Minutes, Book C, Pg. 186 Minutes District Court, Gregg County, Texas.

5

from former husband James R. Oliver. (Exhibit J).[18]

15.        Upon Lettuce Beall Frazier's death, the Property passed intestate to her two daughters, Emily Oliver and Harriet Alfred.

16.        On or about 02-12-1917 A.A. King allegedly paid $1500.00 to Annie Hart (daughter of Emily Oliver) for her interest in said property located in the P.W. Warraner Survey. The deed falsely alleged that Annie Hart was the sole surviving heir of Lettuce Beall and Emily Oliver. Annie Hart was not the sole heir of Lettuce Beall Oliver Frazier and Emily Oliver. The deed should have stated only Annie Hart's interest to the said tract of land (Exhibit K).

17.        The rightful co-owners/joint tenants to the Property at that time were: Annie Hart and Belle Holmes, Walker Thompson, and Johnnie Henderson, (Emily Oliver's children) and Clay Barrow and Alice Barrow (Harriet Alfred's children).

18.        On or about 05-25-1918 A.A. King along with C.R. Floury and J.T. Florence deeded the same property located at P.W. Warraner back to Annie Hart.  But this time including her sister Bell Thompson Holmes and the rest of her siblings, but once again, he inaccurately identified Annie Hart as the only heir. The deed named Annie Hart, Bell Holmes, and John Holmes in the amount of $1,742.50 paying the amount out in a four-year installment. However, the "Vendor's Lien" was never executed by Annie Hart, nor any of the other lawful owners of the Property.  Furthermore, Bell Holmes and John Holmes never sold their interest to A.A. King. (Exhibit L).

19.        On or about 05-29-1919 A.A. King et al applied a foreclosure judgment against Annie Hart for the entire Property, instead of only Annie's specific interest in the property (Exhibit M).

20.        On or about 11-22-1920 during the Annie Hart versus A.A. King case, Annie

_____

[18] Minutes, Book C Pages. 250, 252 & 311 Minutes District Court, Gregg County, Texas.

testified on record that she borrowed $100 from A.A. King (personal loan) to purchase a mule. A.A. King had knowledge Annie Hart could not read, and fraudulently had her sign a deed to her interest in said property. Annie Hart retained her interest in the Property. A.A. King merely attempted to remove them from the property without success of removal (Exhibit N).

21.        On or about 05-06-1921, A.A. King obtained a judgment to remove everyone, including Walker Thompson who was not a party to the lien, from the premises of P.W. Warraner, which was their homestead.  This judgment was illegal and failed to vest title in A.A. King because the Property had never been partitioned and was jointly owned by several family members as cotenants, and was their homestead[19] (Exhibit O).

22.        On or about 03-11-1931, a witness Affidavit was filed claiming that A.A. King acquired title to the Property under the theory of adverse possession.  (Exhibit P). However, this adverse possession claim was horribly deficient. A.A. King himself never filed a claim for adverse possession. The affidavit was not signed by A.A. King.  Nor was the Property accurately identified.  The witness affidavit also falsely states that James R. Oliver and subsequently, his widow, Lettuce Beall Oliver were also adverse possessors. The witness statements provided in the affidavit were false and directly contradicted the property records. There exists in the property record a long history of the disputed ownership of the Property.  And each and every time, and the courts always decided in favor of the heirs of Lettuce Beall Oliver. Despite the numerous attempts to do so, title was never effectively transferred from the heirs of Lettuce Beall Oliver (Plaintiffs).

23.        Even if the Affidavit of Adverse Possession was not deficient on its face, A.A. King failed to establish ownership, because as an adverse possessor, he failed to meet the elements for adverse possession in the state of Texas.

---

[19] See, *Wilcox v. Marriot 103 S.W.3d 469, 472* (Tex. App.- San Antonio 2003, pet. Denied).

7

## LIKELIHOOD OF SUCCESS ON MERITS

Plaintiff has rightfully commenced a Trespass to Try Title action against Defendant as Defendant is currently in possession of property belonging to Plaintiff. Trespass to Try Title is the cause of action for determining title to lands, tenements, or other real property and is governed by Chapter 22 of the Texas Property Code. Tex. Prop. Code Ann. § 22.001.[20] A Trespass to Try Title action is the exclusive method to adjudicate rival claims of title to real property.[21]

### Trespass to Try Title Action

To maintain an action of Trespass to Try Title, the person bringing the suit must have title to the land sought to be recovered.[22] A plaintiff's right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary. In a trespass-to-try-title action, the plaintiff is required to prove his or her title by proving (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations; or (4) prior possession which has not been abandoned.[23]

The action of Trespass to Try Title was introduced in Texas by the Act of February 5, 1840 "to abolish the senseless fictions of the English common law [action of ejectment]". (5) The action is purely statutory. (6) The proceeding accords a legal, as distinguished from an equitable remedy. (7) It is not to be confused with a suit to Quiet Title or a suit to establish an interest in an oil and gas lease or a suit in equity for an injunction to restrain a defendant from trespassing. Two fundamental characteristics of the action of Trespass to Try Title are important in this case.

---

[20] See generally, Texas Property Code. Tex. Prop. Code Ann. § 22.001, et seq.
[21] *Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex. App. - El Paso 2012, pet denied.).
[22] *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.--Texarkana 2010, no pet.).
[23] *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 728 (Tex. App.--Eastland 2012, no pet.).

First, although the suit is to Try Title, the proceeding is a possessory action for recovery of land possessed by a trespasser. "To maintain the action there should be a present legal right to possession with such title as renders the possession lawful. * * * The petition of plaintiff is required by the rules of court to state that he was in possession of the premises or entitled to possession thereof, which allegation must be proved. A right of possession is thus made an essential to the cause of action in Trespass to Try Title. If the plaintiff shows possession, his own or a predecessor in title, prior to defendant's possession, and a regular chain of title connecting himself with such possession, the plaintiff establishes a *"Prima Facie"* title. If the plaintiff's right of possession has not accrued at the time of trial, the action is premature.

Second, it is settled in Texas that an owner of an undivided interest in land may bring suit in Trespass to Try Title without joining the other part owners. "Proof of title to an undivided interest in a tract or survey will support a recovery of the entire parcel as against a stranger to the title. It follows that an action of Trespass to Try Title may be maintained by one of several cotenants. Thus, as against a trespasser, the entire premises may be recovered by one who has taken a conveyance of a fractional interest in the property. A tenant in common may maintain an action to recover the whole of the land from one having no title."[24] In a suit to recover title and possession, the plaintiff is not required even to make a mortgagee a party. Galveston,[25] "As to the first point, the want of necessary parties, it is plain that appellant has overlooked the fact that this action is not in equity to remove cloud, but is at law to try title. In such an action one cotenant can sue for and recover title to the whole tract for the benefit of himself and his cotenant, as

---

[24] *Turnbow v. Richardson*, Tex.Civ.App.1941, 149 S.W.2d 616.
[25] *H. & S. A. R. Co. v. State*, Tex.Civ.App.1896, 36 S.W. 111; *Booty v. O'Connor*, Tex.Civ. App.1928, 13 S.W.2d 220, affirmed *Brooks v. O'Connor*, 120 Tex. 121, 39 S.W.2d 22.

9

against one having no title, and it is settled law in Texas that a lessor and lessee in an oil and gas

lease are cotenants."[26]

In Humphrey v. Stanolind Oil & Gas Company, 5 Cir., 1956, 232 F.2d 925, 927, we held

that fractional, nonparticipating royalty owners and warrantors of defendant's title, claiming

under the same chain of title as the defendant, were not even conditionally necessary parties'

defendant in the sense that Rule 19(b), F.R.C.P., authorized the court to require their joinder

when joinder would not oust the court of jurisdiction. This Court, reversing the district court,

said:

"[MOVANT] concedes that the rule in Texas and in the Federal Court is that persons

claiming an individual interest in land may sue and be sued without joining others so claiming. It

nevertheless, without citation of authority or, as we think, any sound reason, contends here that

Rule 19(b) authorized the action taken. It does not in its motion allege, it does not claim here, or

if it does, it does not point to any reason for so claiming, that the defendants it seeks to have

made parties are such persons as 'ought to be parties if complete relief is to be accorded between

those already parties'.[27]

Defendants distinguish the Murphy case on the ground that the absent party was a lessor

whose 1/8 interest would not be affected by litigation involving the 7/8 leasehold. We observe,

however, that a lessor is a cotenant with the lessee, claims through the same chain of title, and

shares in the risk of adverse litigation affecting title and possession. Defendants distinguish

Humphrey v. Stanolind on several grounds: (1) that the absent parties had no such interest as the

oil payees in the instant case, but were merely lessors having no interest in the leasehold (as in

---

[26] See *McComb v. McCormack*, 5 Cir., 1947, 159 F.2d 219.

[27] See *Mackintosh v. Marks' Estate*, 5 Cir., 1955, 225 F.2d 211 and *Estes v. Shell Oil Co.*, 5 Cir., 1956, 234 F.2d 847.

Murphy); (2) that the opinion is based on Rule 19(b), not on Rule 19(a), the rule invoked in this case. Defendants rely principally on Keegan v. Humble Oil & Refining Co., 5 Cir., 1946, 155 F.2d 971, 973. Keegan alleged ownership of an undivided one-fourth interest in certain land in Harris County, Texas. He brought a Trespass to Try Title action against Humble. Humble moved to require joinder of its lessors and the holders of royalty interests claiming under the Humble lease. The motion was overruled. Keegan filed an amended complaint specifically attacking the validity of Humble's lease and asked for a decree cancelling that lease. Humble then renewed its motion that Keegan join the absent royalty holders. The district court sustained the motion, and dismissed the suit since the addition of some of the new parties would have destroyed diversity.

The Court affirmed:

"We prefer, however, to rest our decision on the absence of the owners of the overriding royalty interest. This is an interest carved out of the lessees' share of the oil as distinguished from the owners' share.[28] Their interests are so bound up with Humble Oil & Refining Company [the defendant] that the relief prayed for in the bill divesting Humble of its leasehold would deprive them of their right to share in the oil produced. These parties have no reversionary interest separable from their right to receive a portion of the oil produced. A decree depriving them of such interest without being heard could not be legally made, since no court can make a direct adjudication on rights of parties not before it.[29]

"The absent defendant Sperry [the owner of an overriding royalty, resident of Washington, D. C.] and others similarly situated were indispensable parties. Cf. Associated Oil Company v. Miller, 5 Cir., 269 F. 16; Vincent Oil Co. v. Gulf Refining Co., 5 Cir., 195 F. 434;

---

[28] *Wright v. Brush*, 10 Cir., 115 F.2d 265
[29] *Gregory v. Stetson*, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792.

Roos v. Texas Company, 2 Cir., [1927,] 23 F.2d 171; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472."

The Keegan case would be on all fours with this case, if the same principles that apply too absent parties' defendant apply also too absent parties' plaintiffs. The same principles do not necessarily apply. Under Texas law, a single plaintiff may bring an action of trespass to try title without joining his lessor, cotenant, surface owner, lienholder, mortgagee, or warrantor in title. All of these absent but interested parties have an ownership or direct interest in the land itself or in minerals treated as land. They are just as bound up with a judgment affecting a lessee's possession and opportunity to produce oil as the holder of the working interest. They too are affected adversely by litigation wiping out the working interest. Nevertheless, they are not necessary parties' plaintiff in a statutory action limited to issues of the plaintiff's right to possession and chain of title. In such an action as Trespass to Try Title there is more reason for dispensing with an absent owner of an oil payment than there is for dispensing with other absent owners of interests in land, since the payee has no right to possession and therefore no standing to bring the suit in the first place. "The same reasoning there employed to determine that a royalty interest is land for the purpose of taxation will likewise determine it to be land for the purpose of fixing the venue of a suit for its recovery, or for damages thereto. And, if this be true of a royalty interest in minerals, it must be equally true of an overriding royalty in minerals. For, though an overriding royalty is carved out of the working interest of a lease, the owner of the overriding royalty stands in the same relation to the operator of the lease, as regards the right to receive some fractional portion of the oil and gas produced and saved, as does the owner of a royalty interest." [107 S.W. 2d 1039.]

In Knight v. Chicago Corporation, supra [183 S.W.2d 668], the court, in discussing the terms "undivided interest, overriding royalty or oil payments" as used in an oil and gas lease, said:

"We think the terms undivided interest, overriding royalties and oil payments have certain well defined meanings in Texas. All three types of interest are carved out of and constitute a part of the working interest created by an oil and gas lease. An overriding royalty is a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production. The oil payment is similar to the overriding royalty, except that the interest of the assignee ceases upon his receiving a certain amount of money or value out of oil or gas produced from a certain percentage of the working interest. The interest commonly spoken of as an 'undivided interest' is an undivided percentage of the working interest, which differs from the oil payment or the overriding royalty in that it is chargeable with its pro tanto share of the cost of development and production."

An undivided interest, an overriding royalty, and an oil payment are all interests in the land carved out of the working interest and therefore inevitably affected by the lessee's possession of the land and exploitation of such possession to produce oil and gas. Still, the owners of these incorporeal hereditaments have no possessory interest. For tax purposes, the sale of an oil payment is not the sale of a capital asset, but is merely the sale of the right to ordinary future income.[30] And, for purposes of partition, "owners of the overriding royalties [which are similar to oil payments] do not have the right of possession or the right to share in the possession under the lease, and consequently, it is not necessary that their interests be partitioned."[31]

---

[30] *Commissioner of Internal Revenue v. P. G. Lake, Inc.*, 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743.
[31] *Belgam Oil Co. v. Wirt Franklin Petroleum Corp.*, Tex.Civ.App.1948, 209 S.W.2d 376, 380.

The oil payment payee has no right to drill, no right to the surface, no claim to the possession essential, under Texas law, for an action of trespass to try title. Under Texas law, as we see it, Lloyd, Pitts, and Hayutin, as payees, would have no standing in court to bring the suit brought in this case.

Adverse Possession Elements

Defendant's entire basis for operating on the Property is based upon a faulty Affidavit of Adverse Possession.  Texas Civil Practices & Remedies, Sections 16.021, et. seq. establishes that in order to successfully transfer title on an actual adverse possession, one would have to meet all five (5) elements to properly acquire any property especially the one in question.[32]

Open and Notorious

This element explains how one should publicly use the property as his/her own and give the recorded owner an option to do something. However, the property in question was occupied by the rightful owners. A.A. King forcefully removed the lawful owners from the property using a false judgment to remove them from the property in 1921 for non-payment of an alleged personal loan. This attempted ouster violated the Homestead Act and was not applicable all of the co-tenants.  King used judgment to remove them illegally and subsequently implemented the witness affidavit in an attempt to transfer ownership.  King maliciously filed the Adverse Possession Affidavit in the mineral deed instead of the property records. The Property was never severed.

Peaceable

---

[32] Texas Civil Practices & Remedies, Sections 16.021, et. seq

14

One would have taken property in peace or inclined to avoid argument or violent conflict. However, record from an early deposition of one of the family Ennis Taylor who witness the era of time of A.A. King during his violent actions to possess the property in question.

### Claim of Right Possession

When the adverse possessor indicates, by words or conduct, that he holds the land as against all others. However, there was never then, nor today, a claim made in writing by A.A. King that he holds the land as against all others. Texas Business and Commerce Code Sections 26.01 and 26.02(b) require that transactions and conveyances of property be in writing. Although there was a witness affidavit that was signed by someone other than A.A. King himself, it contains false statements which directly conflicted the documentation in the property record.

The affiants incorrectly characterized the rightful owner as an adverse possessor. The affidavit also alleged that the purported owner (A.A. King) resided on the Property. However, records indicate that A.A. King resided in another county. Regardless to all of the discrepancies, that Affidavit is the basis upon which the Defendant is present on Plaintiff's property.

### Continuous the Adverse Possessor

An Adverse Possessor must "continuously" occupy the land throughout the statutory period, in a manner consistent with the normal uses of similar land. The land in question was used as the family Homestead and the raising of families. A.A. King used the property to drill oil and gas in effort to make money. His homestead was located in Longview, Texas according to the Texas census.

The 1910 census shows A.A. King living 3 farms down from his father J.S. King, who owned 175 acres of property out of the Mary Van Winkle survey. A.A. King and Lottie King are

15

shown to be living near the Butts and Rice families. Per the 1920 census, A.A. King is still shown to be living on or around the same property near the Butts and Rice families, being the same residence and/or homestead (Exhibit A-1).

<u>Hostile Possession</u>

Possession is "hostile" when the adverse possessor occupies land without the title holder's consent and in a manner inconsistent with his rights. A.A. King filed the witness affidavit stating the years go back to 1918 putting him in the home with the family, which concludes that hostile was not valid, since the family was not removed until 1921.

**Adverse Possession Claim Fails**

Texas law mandates that each and every rule must be met in order for a claim of Adverse Possession to be successful. If one (1) element is not met, the claim fails. Based upon the foregoing, A.A. King's claim of adverse possession fails. Miserably.

**Title Lies with Heirs of Lettuce Beall Oliver**

Each and every conveyance to this un-severed property concerning title is invalid due to Lettuce Beall Oliver being the only bona-fide ownership proceeding the death of her husband James R. Oliver. Plaintiff's title is superior to any alleged title possessor in 85 years. The Plaintiff ("Movant") can show and prove with direct evidence that Plaintiff's title will uphold with the laws of Texas.

## <u>IRREPARABLE HARM IS LIKELY</u>

Petitioner has personal knowledge that Respondent (Breitburn Energy Partners, LP., hereinafter referred to as Breitburn Entities) has a well-formed plan to act in a manner that surely cause petitioner serious harm.

The planned act complained of, is the continuance of permissible drilling of oil and gas on P.W. Warraner Survey, connected too abstract 214 (consisting of 366.7 more or less acres) while defendants are in Bankruptcy Court while a civil action is in progress (Cause # 2015-1679-CCL2) against said property.

There is an unavailability of adequate remedy at law that will cure any damages while respondent (Breitburn Entities, i.e. QRE Operating LLC.,) continues to drill, operate, and receive monetary gain and pay out monies to wrongful heirs and any interest holder while there is a case pending under Chapter 11 Bankruptcy in New York and a civil suit in Gregg County, Texas. Therefore, the petitioner may not receive full awarded damages after the harm has occurred which will not restore the petitioner's threatened loss entirely too the fullest.

## BALANCE OF HARM

The threatened harm to the petitioner outweighs any substantial harm to the respondent. The petitioner has lost property and mineral surface by force for over eight decades and continuing, due to false documents and fraudulent conveyances, leases and assignments etc. The petitioner and her family has suffered physical harm, mental anguish, their rights were also violated under the **14th Amendment** as well as monetary loss for over 85 years and counting. While Cause # 2015-1679-CCL2 is ongoing the petitioner continues to suffer loss due to business and transactions taking place on record and off record. The petitioner suffers another loss due to respondent (Breitburn Entities i.e., QRE Operating LLC.,) currently restructuring their financial abilities to pay any creditor in Bankruptcy Court (Cause) # 16-11390-(smb)

## PUBLIC INTEREST

Granting the Injunction will not contravene a substantial public interest; Petitioner asked while the civil case in Gregg County, Texas has commenced that the respondent stop drilling,

selling, paying royalty payments, Operating or doing business on said property until the judgment has rendered.

## CONCLUSION

Petitioner has a substantial likelihood of success based on all the allegations, i.e., the facts, the evidence and the Texas law that which enforces legal recorded documents.

Petitioner has shown the court the Texas land grant that P.W. Warraner purchased, the two Deeds that which have been duly recorded in the Gregg County Deed records concerning conveyances to James R. Oliver, the probated will shows James R. Oliver willed said property to Lettuce Beall Oliver and Emily Oliver (daughter), the invalid attempt of Adverse Possession, All the elements that must be met to establish Adverse Possession and the Adverse Possession Witness Affidavit that is being used as of today to prove allege ownership. Since Adverse Possession never was valid, statute of limitations never commenced.

All documents and facts will be proven in court to show the relief is justified. EMS USA, Inc. v. Shary, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

To obtain a temporary injunction, an applicant must prove (1) a cause of action against a defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. Butnaru, 84 S.W.3d at 204. An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages, or if damages cannot be measured by any certain pecuniary standard. Id. The absence of any one of these elements renders an award of temporary injunctive relief inappropriate.

## DEMAND

WHEREFORE, for the foregoing reasons, Plaintiff demands the court grant its Motion for Preliminary Injunction, and to order the respondent to cease and desist from all drilling on P.W.

Warraner Survey Gregg County, Texas associated with Abstract 214 Lease #08039 and Lease #08040 including any and all oil and gas through slant/directional drilling received from this property.

Plaintiff further demands the court to order the respondent to stop all payments of any kind to all and any interest holder in associated with P.W. Warraner Survey Gregg County, Texas Abstract 214, until judgment is rendered.

Respectfully submitted,

Felicia Pierce
9764 Water Tree Drive
McKinney, Texas 75070
(469)742-3653
scorpio76140@gmail.com

# EXHIBIT G

Electronically Submitted
8/25/2016 4:55:35 PM
Gregg County District Clerk
By: Debbie Kinney ,deputy

## CAUSE NO. 2015-1679-CCL2

| | | |
|---|---|---|
| FELICIA PIERCE, | § | |
| *Plaintiff* | § | |
| | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| VS. | § | AT LAW NO. 2 |
| | § | |
| DEBBIE BLALACK, et al, | § | |
| | § | |
| *Defendants* | § | GREGG COUNTY, TEXAS |
| | § | |

## DEFENDANTS' SECOND AMENDED MOTION TO DISMISS PLAINTIFF'S TWELFTH AMENDED PETITION AND BRIEF IN SUPPORT

COME NOW certain Defendants herein (hereafter "Movants")[1] and respectfully files this their Second Amended Motion to Dismiss Plaintiff's Twelfth Amended Petition[2] and Brief in Support of same and would respectfully show the Court as follows:

1.    Statement of the Case

The following facts material to this motion are alleged by Plaintiff.  In 1867, P.W. Warraner sold 320 acres to James R. Oliver.  Two years later, S.S. Barnett sold 120 acres to Oliver.  In 1870,

---

[1] Movants include the following Defendants: East Texas Salt Water Disposal Company, Ricky Davis, Danmark East Texas Field L.P., Danmark Energy LP, Danmark Energy Services, Inc., Danmark Investment LP., Danmark Jacks Creek LP., Danmark Operating Company LLC., and Danmark Management LP (Daniel M. Mitchell), Breitburn Energy Partners LP, QRE Operating, LLC, Breitburn Operating LP, Breitburn Operating GP LLC, Breitburn GP LLC, Breitburn Management Company LLC, Transpetco Pipeline Company, L.P., D/B/A Transpetco Pipeline Company of Texas, L.P., Breitburn Florida LLC, QRE GP, LLC, Breitburn Energy Company, LP, Breitburn Operation, LP, (D/B/A) Breitburn OLP, Breitburn Energy Partners 1, LP, Breitburn Transpetco GP LLC, and Breitburn Transpetco LP LLC, Sunoco, Inc. (R&M), Sunoco LLC DBA Sunoco Wholesale LLC., Sunoco INC, (R&M), Sunoco Pipeline LP., Sunoco Partners NGL Facilities LLC., Sunoco Partners Marketing & Terminals LP., Sunoco Partners LLC., Sunoco Partners Lease Acquisition & Marketing LLC, Sunoco Partners, DBA Sunoco MLP., LP., Sunoco Logistics Partners Operations GP., LLC., Sunoco GP LLC., Sunoco Energy Services LLC., and Sun Oil Company, and QREH GP, LLC (pending dismissal).

[2] Plaintiff's current live pleading is the Twelfth Amended Petition for Trespass to Try Title, Slander of Title, Conspiracy to Steal and Commit Fraud, Civil Conversion, Trespass and Texas Theft Liability Act (herein "Twelfth Petition").  All causes are asserted against all defendants.

**1201**

Oliver died and by his probated will devised all real and personal property owned by him to his wife, Lettuce Beall Oliver and daughter, Emily Oliver,[3] approximately 366.7 acres in the P.W. Warraner Survey in Gregg County ("Warraner Property"). Plaintiff also alleges that a Harriet Alford is a child of Lettuce Beall is one of Plaintiff's ancestors. Lettuce Beall died intestate around 1909.

In 1917, Annie Hart executed a deed to A.A. King of the Warraner Property. Hart recited that she was the sole and surviving heir of Emily (which Plaintiff now disputes). In 1930, A.A. King executed an oil and gas lease to Stebbins covering all of the Warraner Property.[4] Plaintiff contends that on the death of Lettuce Beall, Harriet Alford inherited a share of the land which could not be conveyed by Hart to King. Plaintiff contends that the various defendants hold or have held record title to the mineral estate in the total acreage and refuse to recognize her (and other lineal heirs of Harriet Alford) fractional ownership.

Plaintiff's legal theories have varied from amendment to amendment, but the factual allegations of the sequential petitions remain similar. The causes of action asserted in the Twelfth Petition are trespass to try title, slander of title, conspiracy to steal and commit fraud, conversion trespass and Texas Theft Liability Act. Plaintiff seeks damages in excess of three trillion dollars as "full payment of all monetary gain which each listed defendant received in over 85 years more or less" from the A.A. King leases on the Warraner Property.[5]

---

[3] Oliver's executor sold some land to settle outstanding debt which left 366.7 acres more or less inherited by Lettuce and Emily.
[4] Upon further review of the record, the lease executed by King to Stebbins is the first instrument of record that severed the surface and mineral estates on the Warraner Property. See Exh. C, attached hereto and incorporated by reference.
[5] Since she can only litigate her interests *pro se*, it is assumed that this amount represents Plaintiff Pierce's share of the total damages.

**1202**

She also purports to raise claims under the Texas Deceptive Trade Practices Act and recites several passages from the Texas Penal Code. She alleges that "[e]ach and every person and Business that touched our property committed fraud and conspiracy to steal the oil and land from our family . . . ." She claims that "each and every conveyance" in the Defendants' chain of title is fraudulent. Plaintiff also seeks temporary and permanent injunctive relief against all Defendants. Twelfth Petition, *passim.*

Giving her pleadings a liberal construction, the Twelfth Petition alleges that Plaintiff's ancestors were never divested of title that passed by intestate succession to Lettuce Beall's children and that Plaintiff continues to own her fractional share of the Warraner Property, both surface and mineral estates. To the extent that the deed from Hart to King and King's subsequent designation of homestead recorded in 1931 are to the contrary, they should be held for naught, according to Plaintiff's allegations. Plaintiff seeks a judgment that "complete possession of and right to determine the use and control of those assets and properties" is vested in the "the heirs of Harriet Alford, eldest daughter of Lettuce Beall Oliver, free of any claimed trust, interest, royalty and ownership of any kind . . . ." Such an order would upset record title and divest possession of the Warraner Property from those who have held possession under duly recorded instruments for nearly a century.

2.    Procedural Background

On September 10, 2015, Plaintiff filed her Original Petition suit against a single defendant, Lottie Guttry. Defendant Guttry answered and filed her answer, including special exceptions, pleas in abatement and affirmative defenses. The special exceptions and pleas in abatement came on for hearing on November 6, 2015.

3.     Court's Order Granting Abatement No. 1

Following arguments, this Court sustained the plea in abatement for non-joinder. The Court abated the case for ninety days to permit Plaintiff to comply with the terms of its Order. A true copy of the Court's Order ("Order") is attached hereto as Exhibit "1". Contemporaneously, the Court issued a letter ruling which supplemented and explained the Order. A true copy of the letter ruling is attached as Exhibit "2". As the Court correctly explained, litigation of the Plaintiff's claims could adversely affect the property rights of several groups of persons and entities whose financial, economic and business interests flow from the mineral deed in question and severance of estates at issue; yet those interests were not before the Court.

Among other deficiencies, the Court found that Plaintiff also had failed to join and make a party to the case "persons potentially adversely affected by a judgment in favor of Plaintiff . . ." Order, p. 1. The Court further found that all persons potentially affected are "necessary and indispensable parties[6]. . . ." *Id.*

The Court identified several absent interest owners that could potentially be affected by an adverse declaratory judgment or suit to quiet title. These owners included "surface owners, oil, gas and mineral owners, royalty owners, overriding royalty interest owners, lessees of the mineral estate, working interest owners, pipeline right of way easement owners, surface lessees or any other individuals or entities potentially affected by Plaintiff's claims." *Id.* The Court abated the case and allowed 90 days for Plaintiff to replead and join these persons or be subject to dismissal of the case. *Id.*

---

[6] Movants acknowledge that Texas courts have moved away from attempting to classify parties as "necessary," "proper," or "indispensable. *See Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 106 (Tex. 1981) (focus is whether a court ought to proceed with those present).

**1204**

As the deadline for joinder approached, Plaintiff had added only seven defendants who were alleged to own 100% of the surface of the Warraner Property.   At that time, Plaintiff had neither sued nor served any other of the absent interest owners previously identified by the Court. To the contrary, her actions appeared to be directed to avoiding the Court's requirement for joinder of necessary parties.[7]  Following the first abatement, the Movants urged their Motion to Dismiss against the Plaintiff's then-live Seventh Amended Petition in March 2016.  The Motion to Dismiss was based on non-joinder of necessary parties under Tex. R. Civ. P. 39 and for failure to comply with the Court's order requiring joinder.   Following arguments, the Court decided to table Defendant's Motion to Dismiss, granted Plaintiff's oral motion for continuance on the motion to dismiss and granted an additional ninety days for Plaintiff to join the absent interest owner as required by the November, 2015 Order.  Order, p. 1.

Also, at the March 2016 hearing, the Plaintiff argued her Motion to Sever the litigation. Plaintiff argued she should be entitled to sever and try this case in two distinct phases—first, against only those with interests in the surface estate and then, in a second trial, prosecute her case against all owners of the mineral estate.   The Court denied the Motion to Sever.   The Court correctly noted that separate proceedings would be inefficient and wasteful of judicial resources. The Court declined to engage in "piecemeal" litigation against a "handful of defendants" when the claims of the litigation would affect those in possession of the surface, those in possession of the minerals, and those whose rights flow from the severance of the two estates.  Tr. 33-36.  A true copy of the Transcript of Proceedings (Tr.) is attached as Exhibit "3".

---

[7] For example, Plaintiff filed a Motion to Sever and argued that she should be allowed to proceed separately against the surface owners and the mineral estate owners.  Therefore, by joining only those in possession of the surface, according to Plaintiff, she was in compliance with the Court's Order.  *See* Tr. At p. __. Movants, at the time, called out Plaintiff's "attempts at artful pleading" to avoid bringing necessary parties before this Court.

**1205**

Since the time of the March hearings, Plaintiff has brought suit against a number of additional defendants. The total number of defendants sued is now 172. Of that 172, the Court's docket reflects that only 55 have actually been served and answered. Of the total 172, the Court's docket reflects that 117 have not answered or appeared.[8] In addition, there are a significant number of absent interest owners who, despite this Court's previous two orders, Plaintiff has neither sued nor served and who have not entered a general appearance. Among these are 22 persons identified as the "involuntary plaintiffs", undivided mineral interest owners and a significant number of owners of right-of-way easements across the surface of Warraner Property.

Plaintiff's argument against dismissal boils down to the following:

- She has re-pleaded removing the claim to quiet title and declaratory judgment and substituted the cause of action of trespass to try title. She contends that under Rule 784, she has "properly re-pleaded in conformance with the Texas Rules of Civil Procedure and as ordered by the judge." *See* Plaintiff's Notice of Information and Response, p. 1.

- Rule 784 only requires her to join persons in possession if the premises are occupied. She understands this to mean surface possession.

- The oil and gas lease given by King to Stebbins and subsequently assigned to Sinclair was released by Sinclair in 1958. Presumably her contention is there is no necessity to join person or entity whose rights flow from the oil and gas lease that she contends is released. Although this is a merits argument and premature, it must be addressed in the context of joinder because it is simply a misrepresentation of

---

[8] In other words, these are parties that <u>Plaintiff</u> has identified as one that should be before the Court, but at the time of this filing has no record of service on file.

the record and the instruments on file. In truth, the oil and gas lease has never been released, and is still in force and effect.

- King's designation of homestead filed in 1931 is in error and should be invalidated. This is also a merits argument and a response is reserved until a later date. It has no bearing on the issue of joinder. See Plaintiff's Notice of Information and Responses ("Notice").

For the reasons set forth below, Defendants contend this case should now be dismissed. Plaintiff has failed to join all parties who ought to be joined under Rule 39 as this Court has recognized in November, 2015 and March, 2016. Accordingly, having twice been given opportunities to cure the non-joinder of these parties but failing to avail herself of those opportunities to properly join them, the case should now be dismissed.

4.    Bases for Motion to Dismiss

*Note*
*Plaintiff*
*complied*
*on March 4*
*2010*

- The Court has determined that persons whose rights in the Warraner Property could be adversely affected by a judgment in favor of Plaintiff should be joined in accordance with Rule 39(a).
- Tex. R. Civ. P.784 identifies those that must be joined in a trespass to try title action; Rules 785-86 identify those that may be joined. Tex. R. Civ. P. 39 governs this Court's discretion in deciding whether to join those persons with an interest other than those in actual possession.
- The Plaintiff has made no showing that any of the Rule 39(a) absent interest owners cannot be joined. Tex. R. Civ. P. 39(b) and 39(c).
- This Court has twice ordered Plaintiff to join persons or entities with interests in the subject property and gave Plaintiff two opportunities to amend and join these persons with extended abatements of proceedings to permit time for service of process. Plaintiff has failed to amend and join absent interest owners as ordered.
- Both the applicable rules and case law support Defendants' Motion to Dismiss.

5.    Argument and Authorities

A.    Dismissal for Failure to Join Party Defendants

The trial court's decision regarding the joinder of parties is reviewed under the abuse of

discretion standard. *Royal Petroleum Corp. v. Dennis,* 332 S.W. 2d 313, 317 (Tex. 1960); *Kodiak Res., Inc. v. Smith,* 361 S.W.3d 246, 248-49 (Tex. App.—Beaumont 2012, no pet.); *Longoria v. Exxon Mobil Corp.,* 255 S.W.3d 174, 180 (Tex. App.—San Antonio 2008, pet. denied) (*Longoria I*).[9] A trial court abuses its discretion if it acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). Texas Rule of Civil Procedure 39 governs questions regarding joinder.[10] *Brooks v. Northglen Ass'n.,* 141 S.W.3d 158, 162 (Tex. 2004). No precise formula exists to determine whether a particular person falls within this provision. *Cooper v. Texas. Gulf Indus., Inc.,* 513 S.W.2d 200, 204 (Tex. 1974); *Longoria,* 255 S.W. 3d at 180. However, when an absent person falls within the provisions of the rule, the trial court has a duty to effect the person's joinder. *Longoria,* 255 S.W.3d at 1800; Tex. R. Civ. P. 39(a) ("If he has not been so joined, the court shall order that he be made a party."). When a trial court determines a person falls within the provisions of Rule 39(a) and is subject to service of process, he must be joined. *Longoria,* 255 W.W. 3d at 184. Although Rule 39 provides for joinder in mandatory terms, "there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision." *Cooper,*

---

[9] *See also Longoria v. Exxon Mobil Corporation,* 2016 Tex. App. LEXIS 7917 (Tex. App.—San Antonio 2016, no pet. history) (Mem. Op.) (*Longoria II*). A true copy has been provided to the Court and counsel by Notice of Supplemental Authority filed in this cause.

[10] Rule 39(a) concerns the joinder of "persons needed for just adjudication" and provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

513 S.W.2d at 204); *Longoria*, 255 S.W. 3d at 180. The trial court has "broad" discretion in deciding matters regarding joinder. *Royalty Petroleum Corp.* 332 S.W.2d at 317.

Rule 39(b) provides a basis for determining whether an action should proceed in the absence of parties described in Rule 39(a*). Clear Lake City Water Authority v. Clear Lake Util. Co.*, 549 S.W. 2d 385, 390 (Tex. 1977). If a person required to be joined under Rule 39(a) cannot be joined, the trial court then decides whether "in equity and good conscience" the action should proceed among the parties before it or should be dismissed after considering the factors listed in Rule 39(b). Tex. R. Civ. P. 39(b); *Longoria*, 255 S.W. 3d at 180.

    B.    <u>Rebuttal of Plaintiff's Arguments</u>

    1.    Trespass to Try Title and Rule 39

Plaintiff argues and cites authority purportedly to support her argument that in a trespass to try title action there is a bright line rule that only those in possession need be joined in the lawsuit. From her mechanical application of Rule 784, she concludes that the Court's order under Rule 39 is improper. The legal issue presented is whether the Court need only look to Rule 784 in this case to identify the parties necessary for a just adjudication. Plaintiff's position is incorrect.

The joinder provisions of Rule 39 apply to both trespass to try title and declaratory judgment claims. A trespass to try title suit must be brought against the person in possession if the premises are occupied. Tex. R. Civ. P. 784. Others who claim title to any part of the premises or have an interest in the property may be joined. *See* Tex. R. Civ. P. 784-786. The trial court's decision whether to require joinder of persons other than those in possession is governed by Rule 39. *See Dennis*, 332 S.W.2d at 316-17 (holding trial court has discretion to require joinder of royalty interest owners whose interests will be directly and possibly adversely affected by decree in trespass to try title action); *see also Texas Oil & Gas v. Ostrom*, 638 S.W.2d 231, 234-35 (Tex.

**1209**

App.—Tyler 1982, writ ref'd n.r.e.) (holding trial court did not abuse its discretion in failing to require joinder of owners of non-possessory royalty interests and possibilities of reverter in partition suit between owners of mineral leasehold estate, although "it would be wise" to join them). *See Longoria I*, 255 S.W.3d at 180.

Here, both possessory and non-possessory interest owners would be affected by a judgment invalidating the Hart to King deed and the King's oil and gas lease to Stebbins. *See* Notice, p. 4.

Breitburn's interest as well as the interest of other absent owners or persons with an interest in the property all derive from the 1930 oil and gas lease. Even if these absent parties are not bound by a judgment in favor of Plaintiff, such a judgment would cloud their title. Clearly, the joinder of these parties is within this Court's discretion to permit them to defend their interests as failure to join them could impair their ability to protect their full interest. *See Longoria I,* 255 S.W.3d at 181-82. The Court earlier recognized the necessity for bringing in these additional parties, both in its Order and it's Rulings as shown in the transcript of the March 2016 hearing.

    2.    Plaintiff Completely Misrepresents the Release

In her Notice, Plaintiff contends in various arguments that the 1930 oil and gas lease and its various assignments were released by Sinclair in 1958. This Motion to Dismiss is based solely on Plaintiff's failure to join persons who in fairness ought to be before the Court. So, discussion of a particular instrument may be viewed as a discussion of the merit, or lack thereof, the Plaintiff's claim. However, Movants will address the claim only as it relates to the issue of joinder because Plaintiff infers that any interest in the mineral estate, whether possessory or non-possessory after the 1958 release need not be of concern to the Court.

Whether by design or failure to review the record, Plaintiff has misrepresented the release in question. The Release is recorded in the Gregg County Deed Records at Instrument No. 5231.

A true copy of the release is attached as Exhibit "4" and incorporated herein. The Release when read in light of the Release and Agreement under which rights are being released, reveals clearly that it has no relation to the 1930 oil and gas lease or oil and gas production.

To the contrary, the Release releases only Sinclair's "right, title and interest" in a Release and Agreement dated August 15, 1941. The Release and Agreement is recorded in the Gregg County Deed Records, v. 264, p. 25, and a true copy is attached as Exhibit "5". On its face, the Release and Agreement is executed in settlement of a claim by King and others against Sinclair Prairie for past use of water from the Warraner Property and in the same document grants Sinclair the right to future use of water for agreed upon consideration. The Release merely releases Sinclair's right to use water that was granted in the earlier document.

Plaintiff mistakenly argues at various times production has continued on the Warraner Property "without a recorded lease" or with "no lease on file" or that the "gas lease was released". All are simply misstatements of fact and the record and should be ignored, whether in determining issues of joinder or otherwise.

C.      Application of Rule 39(a)

Although claims have changed in various iterations of the Plaintiff's Petition, it is now clear that the thrust of her claim is trespass to try title and associated tort claims. *See* Twelfth Petition, *passim*. Among other relief, Plaintiff seeks her fractional share of damages, title and right to possession of the Warraner Property. A trespass to try title suit is the statutory action to determine title to property in Texas. Tex. Prop. Code Ann. § 22.001(a) (West 2014); *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004).

From the time of their original answers, Defendants have pointed out the defect in parties and have requested abatement of this action to permit joinder of necessary, but absent, parties.[11] In the original Order granting abatement, this Court made two significant findings. First, that Plaintiff failed to both identify and join persons potentially adversely affected by a judgment in favor of Plaintiff. Second, that those persons potentially adversely affected by a judgment in favor of Plaintiff are "necessary and indispensable parties to this Cause". Order, ¶ 1. The Court ordered Plaintiff to re-plead within ninety days. In March, at a second hearing on a pending Motion to Dismiss for non-joinder the Court granted a second abatement and continued the hearing on the dismissal motion. The second abatement has now expired, with the vast majority of those persons that the Court found ought to be joined, still not properly before the Court.

In the time since the March 2016 hearing, Plaintiff has added some, but by no means all, of the persons and entities whose interests could be adversely affected. Moreover, she has failed to overcome the substantial deficiencies regarding joinder of those persons and entities. For example, there are numerous surface easement right of way owners who have not been joined as defendants. She contends these owners have a non-possessory interest and need not be joined under her reading of Rule 784. Such an extreme position is contrary to the Court's Order.

Further, as a *pro se* litigant, Plaintiff is able to sue only for the fractional interest that she owns, if any. Plaintiff identifies in her pleading at least twenty two other purported descendants of Lettuce Beall Oliver, through Harriet Alford, as "involuntary plaintiffs". There is no way to know at this point if the listing of these persons is illustrative or exhaustive. Nonetheless, in their absence, complete relief cannot be afforded to those parties present and the many parties defendant that are still absent. As a procedural matter, Plaintiff presumably is under the mistaken belief that

by her typing their name on a pleading, those persons are now joined in the suit and subject to the Court's jurisdiction. However, there is nothing in the record (or any pleading) that reflects that any of those persons have been served with citation or have entered a general appearance subjecting themselves to the jurisdiction of this Court.

Involuntary plaintiffs, even if an appropriate procedure vehicle (which is denied), are entitled to the same constitutional and procedural requirements of service of process or making a general appearance in Court subjecting themselves to the general jurisdiction. *Cleaver v. George Staton Co.,* 908 S.W.2d 468, 471 (Tex. App.—Tyler 1995, pet. denied). Plaintiff to date has not accomplished the joinder of these "involuntary plaintiffs". Finally, there is no pleading which explains why these persons, even if they are subject to service of process, have not been joined. Tex. R. Civ. P. 39(c).

Whether for strategic or tactical reasons, Plaintiff resists joinder of persons or entities that this Court specifically ordered to be joined, including but not limited to certain undivided mineral interest owners, pipeline right of way easement owners and the "involuntary plaintiffs" and other potential claimants, to name but a few. Again, compounding the Plaintiff's failure, she presents no pleadings which explain why these persons are not joined. Tex. R. Civ. P. 39 (c).

Clearly, the persons or entities specifically identified in the Court's abatement order have an interest in the property, and are among those whose rights could be adversely affected by a judgment in a trespass to try title action. First, and foremost, the very instruments which Plaintiff contends are invalid—the Hart deed and the King lease—are the instruments from which interests held by the current Defendants flow. A judgment for Plaintiff would return title and possession to a time prior 1917 and invalidate the Hart deed to A.A. King and affect all successors in interest, including the 1931 mineral deed that severed, for the first time on record, the surface estate from

the mineral estate on the property at issue.    The 1930 oil and gas lease is the instrument which grants certain possessory and non-possessory rights to these defendants in litigation of Plaintiff's fractional interest.  Clearly, the Defendants present and potential defendants still absent are persons with an interest in the subject matter of this suit  and in their absence a disposition would subject then to a substantial risk of multiple or inconsistent obligations in trailing lawsuits by other purported descendants.  As in *Longoria*, the effect of a judgment sought by Plaintiff would diminish the interest of the oil companies' ownership in the minerals, which would contractually require them to proportionately decrease royalties payable to lessors.  But in their absence, these lessors would not be bound by the judgment and would continue to look to the oil companies for 100% of the royalty on production.

Rescission of the mineral lease will affect the rights of all persons who have an interest in either the surface estate or the mineral estate.  For example, the rights of record owners of the surface or surface lessors may be exposed to claims for possession.  This group necessarily includes fee owners of the surface and persons with contractual rights to the surface such as lessees and licensees, including pipeline right of way easement owners.  Invalidation of pipeline easements can affect not only the property rights of those lessees, but those in commerce who rely on products transported in those lines.  Moreover, only those right of way owners that are before the Court would be bound by any judgment in this case.  So, if Plaintiff is awarded a judgment, some pipeline owners' easements would be invalidated, depriving them of valuable rights, while others would be unaffected.  Easement owners, like surface estate owners, are "possessors" and have a right to be before the Court to preserve their rights.

Likewise, returning title to a time before severance of the estates will place in jeopardy all persons or entities (or their successors in interest, grantees and assignees) who have record title to

the mineral estate.  In addition, other persons or entities whose rights arise from any portion of the mineral lease, either directly or indirectly, are affected.  This would include, but not be limited to, all royalty interest owners, overriding royalty interest owners and working interest leasehold estate owners, some of whose interest may be non-possessory, but arises from and is dependent upon the existence and validity of the 1917 deed and 1930 mineral lease at issue in this case.

There is ample authority in the Texas cases to demonstrate that joinder of persons or entities whose rights emanate from a mineral lease in a suit whose effect will be to invalidate that mineral lease is not an abuse of the Court's discretion.

*Longoria I* is an excellent example and squarely on point.  In that case, Plaintiffs contended their ancestor Jose Longoria acquired one half interest in 9,200 acres in Brooks County by adverse possession before the mineral estate was severed from the surface.  They alleged a fraudulent conveyance in 1919, as well as a judgment taken in 1924, clouded their title.  The trial court signed an order abating the case so the plaintiffs could amend and/or join additional parties.  Plaintiffs filed their Third Amended Petition asserting claims for trespass to try title and declaratory relief. However, Plaintiffs failed to join certain absent interest owners including mineral interest lessors. The trial court dismissed the defendants because of plaintiffs' failure to join the absent mineral interest owners.

On appeal, the Court of Appeals affirmed the dismissal holding that the Plaintiffs' claims required joinder of all of the interest owners for the property in question in accordance with Rule 39 of the Texas Rules of Civil Procedure.  *Longoria*, 255 S.W.3d at 181-83.held that the joinder provisions of Rule 39 apply to both trespass to try title and declaratory judgment claims.  The court of appeals reasoned that according to Plaintiffs' claims, the record title owners all derived their claims from a 1924 partition judgment.  Thus, in order to clear the title they claim they own,

Plaintiffs must plead and prove that the 1924 judgment is void. Such a judgment, even if not technically binding on the absent owners, would cloud their title. Thus, the absent owners should have the opportunity to defend their title, and the disposition of the case in their absence could as a practical matter, impair their ability to protect their interests.

The second issue was whether the trial court should have dismissed the Longoria's case. The court of appeals affirmed, because the Longoria's failed to join the absent mineral estate owners when given an opportunity to do so. When the trial court determines a person falls within the provisions of Rule 39(a), he must be joined. When the plaintiff fails to join such a person after given a reasonable opportunity to do so, the trial court does not abuse its discretion in dismissing the case. The court of appeals affirmed the judgment of dismissal.

There are numerous other examples. In *Royalty Petroleum Corp.,* 332 S.W. 2d at 316-17 the supreme court held the trial court has discretion to require joinder of royalty interest owners whose interests will be directly and possibly adversely affected by a decree in a trespass to try title action. Similarly, in *Kodiak Res., Inc.,* 361 S.W.2d at 248-49, the court of appeals held that it was error for the trial court not to join non-party lessors who had a financial interest in the leases and pooling agreements. In *Pan Am. Petroleum Corp. v. Vines,* 459 S.W. 2d 911, 914 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.), the Tyler Court held that the royalty interest owners were "necessary and indispensable parties".

Based on Plaintiff's failure to join royalty interest owners, overriding royalty interest owners, mineral estate owners, mineral estate lessees, pipeline easement right of way owners after being given ample opportunity to do so, this Court is given "broad discretion" to dismiss the case. *Longoria,* 256 S.W. 3d at 184; *Royalty Petroleum Corp.,* 332 S.W.2d at 317. Here, as in *Longoria I,* the absent interest owners have interests in the subject of Plaintiff's lawsuit—specifically

**1216**

property and contract rights that flow from the deed and mineral lease that Plaintiff seeks to upset. *Longoria I* held it is well within this Court's discretion to determine absent interest owners of record. As in *Longoria I*, this court acts within its discretion to conclude the record interest owners should have the opportunity to defend their title and that disposition of the case in their absence could, as a practical matter, impair their ability to protect their interests. 255 S.W.3d at 182.

D.     Application of Rule 39(b)

*Longoria* also teaches that when a person is deemed to be a person falling within the provisions of Tex. R. Civ. P. 39(a), and is subject to service of process, then he must be joined. When the Plaintiff fails to join such a person after being given a reasonable opportunity to do so, the trial court does not abuse its discretion in dismissing the case. *Longoria*, 255 S.W.3d at 184.

Plaintiff does not contend and has not established that the absent interest owners who remain unserved were not subject to process or could not be made a party to this lawsuit. In fact, there has been no showing that Plaintiff has been unable to join any of the parties now absent, but whose interest could be adversely affected. Rule 39(b) is considered only if it is shown that those parties necessary to a just adjudication cannot be joined. *Id.* Therefore, the Rule 39(b) factors need not be considered or applied here. *Longoria*, 255 S.W.3d at 184.

6.   Conclusion

The argument and authorities recited above demonstrate that the Court is clearly within its "broad discretion" to dismiss this case under Tex. R. Civ. P. 39(a) for failure to join persons who in fairness ought to be before the Court. She asserts she has joined all the parties that need to be joined under her reading of the law. Her contention is that all the parties that need to be in the suit are before the Court. She contends that Rule 784 requires that she only join persons in actual possession.

**1217**

The Court has determined that in the circumstances of this case, where Plaintiff seeks to unsettle the rights of persons and entities that flow from a 1917 deed and a 1930 oil and gas lease, both of which she claim to be invalid, the parties whose rights flow from those duly recorded instruments should be before the Court to defend their long-standing interests.  Plaintiff has failed to join those parties, after being given two reasonable opportunities and abatements of the action to do so.

When the Court determines a person is within the provisions of Rule 39(a), as it has here, then that person must be joined.  When the Plaintiff fails to join such a person after given a reasonable opportunities to do so, the trial court does not abuse its discretion to dismiss the case.

WHEREFORE, PREMISES CONSIDERED, Movants respectfully request this Motion to Dismiss be in all things granted and this cause be dismissed as to all Movants and those joined in these premises with court costs taxed to Plaintiffs and for such other and further relief to which these Movants have shown themselves justly entitled.

Respectfully submitted,

**COGHLAN CROWSON, LLP**
1127 Judson Rd. Suite 211
P.O. Box 2665
Longview, Texas 75606
(903) 758-5543 Telephone
(903) 753-6989 Facsimile
dwestbrook@ccfww.com

By: _/s/ J. Don Westbrook_
    J. Don Westbrook
    Texas Bar No. 21215500

**ATTORNEY FOR MOVANTS**

**1218**

# EXHIBIT H

Electronically Submitted
10/13/2016 11:14:38 AM
Gregg County District Clerk
By: Lindsey Kornegay ,deputy

## CAUSE NO. 2015-1679-CCL2

| | | |
|---|---|---|
| **FELICIA PIERCE,** | § | |
| *Plaintiff* | § | |
| | § | **IN THE COUNTY COURT** |
| | § | |
| | § | |
| **VS.** | § | **AT LAW NO. 2** |
| | § | |
| **DEBBIE BLALACK, et al,** | § | |
| | § | |
| *Defendants* | § | **GREGG COUNTY, TEXAS** |
| | § | |

## FINAL JUDGMENT

On September 2, 2016, came on to be heard the Second Amended Motion to Dismiss of certain Defendants[1] (hereinafter collectively "Movants") and of certain Defendants[2] who expressly adopted by reference and joined in the Movants' Second Amended Motion to Dismiss. The Court received evidence and arguments from counsel and Plaintiff *pro se*. Thereafter, the Court took the matter under advisement. After due consideration of the Second Amended Motion to Dismiss, the

---

[1] Movants include the following Defendants: East Texas Salt Water Disposal Company, Ricky Davis, Danmark East Texas Field L.P., Danmark Energy LP, Danmark Energy Services, Inc., Danmark Investment LP., Danmark Jacks Creek LP., Danmark Operating Company LLC., and Danmark Management LP (Daniel M. Mitchell), Breitburn Energy Partners LP, QRE Operating, LLC, Breitburn Operating LP, Breitburn Operating GP LLC, Breitburn GP LLC, Breitburn Management Company LLC, Transpetco Pipeline Company, L.P., D/B/A Transpetco Pipeline Company of Texas, L.P., Breitburn Florida LLC, QRE GP, LLC, Breitburn Energy Company, LP, Breitburn Operation, LP, (D/B/A) Breitburn OLP, Breitburn Energy Partners 1, LP, Breitburn Transpetco GP LLC, and Breitburn Transpetco LP LLC, Sunoco, Inc. (R&M), Sunoco LLC DBA Sunoco Wholesale LLC., Sunoco INC, (R&M), Sunoco Pipeline LP., Sunoco Partners NGL Facilities LLC., Sunoco Partners Marketing & Terminals LP., Sunoco Partners LLC., Sunoco Partners Lease Acquisition & Marketing LLC, Sunoco LP., DBA Sunoco MLP., LP., Sunoco Logistics Partners Operations GP., LLC., Sunoco GP LLC., Sunoco Energy Services LLC., and Sun Oil Company, and QREH GP, LLC (pending dismissal).

[2] Kerr -McGee Energy Services Corporation, Kerr - McGee Natural Gas Inc., Kerr -McGee Oil & Gas Onshore LP, And Kerr- McGee Shared Services Company LLC, Quantum Resources A1, LP., Quantum Resources B, LP, D/B/A Quantum B, LP., Quantum Resources C, LP., D/B/A Quantum C, LP., and Quantum Resources Management LLC D/B/A QR Management, LLC, James Pee, CitiFinancial Servicing, LLC and Andrew Riley.

ORDERS that the Notice of Lis Pendens recorded by Plaintiff Felicia Pierce in the Deed Records of Gregg County, Texas (#201612977) on or about August 15, 2016 will be void upon entry of this judgment in the absence of an appeal.  The Court further

ORDERS that all other relief requested by either party not expressly granted herein is denied.

This Judgment is final, disposes of all claims and all parties and is appealable.

SIGNED this _____13_____ day of October, 2016.


_____
PRESIDING JUDGE

3

# EXHIBIT I

B 261C (12/09)

# UNITED STATES BANKRUPTCY COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| <u>Breitburn Energy Partners LP, et al.</u> | ) | Case No. 16-11390 (SMB) |
| *Debtor* | ) | |
| | ) | |
| <u>Felicia Pierce</u> | ) | Chapter 11 |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. Proc. No. 16-1198 (SMB) |
| <u>Breitburn Operating LP. Entities and</u> | ) | |
| <u>QRE Operating, LLC,</u> | ) | |
| *Defendants* | ) | |

## JUDGMENT FOR DISMISSAL OF ADVERSARY PROCEEDING

Upon the Court's Written Opinion, dated March 17, 2017, directing the Clerk to enter judgement dismissing the complaint; it is hereby ordered that:

The Plaintiff recover nothing from the Defendants, and that the action be dismissed.


Date:  <u>March 24, 2017</u>                            <u>Vito Genna</u>
                                                        Clerk of Court


                                                        <u>/s/ Anatin Rouzeau</u>
                                                        Deputy Clerk

# EXHIBIT J

**FELICIA PIERCE (PRO SE)**
9764 WATER TREE DR.
MCKINNEY, TEXAS 75070
(972)876-9718 (TELEPHONE)

### UNITED STATES BANKRUPTCY COURT DISTRICT OF SOUTHERN NEW YORK

In re:                                          Chapter: 11

                                                Case No. 16-11390 (SMB)

Breitburn Energy LP., Entities

                    Debtors.

                                                (Jointly Administered)

Felicia Pierce (pro se)

            Plaintiff,                          Adversary

-vs-
                                                Case No. 16-11398 (SMB)
Breitburn Operating, LP
QRE Operating, LLC.

**Plaintiff's Motion Concerning Matters Related to Order Modifying the Automatic Stay, Motion to Vacate Judgment Pursuant F.R.C.P 60(d)(3) Due to Fraud on the Court and Plaintiff's Motion for Damages Due to Deprivation Caused by Debtor's Bankruptcy Filing For Reorganization Under Title 11 U.S. Bankruptcy Code**

### <u>NATURE OF ACTION</u>

Plaintiff Felicia Pierce (Pro Se), respectfully submits Plaintiff's Motion Concerning Matters Related to Order Modifying the Automatic Stay, Motion to Vacate Judgment Pursuant F.R.C.P 60(d)(3) Due to Fraud on the Court and Plaintiff's Motion for Damages Due to Deprivation Caused by Debtor's Bankruptcy Filing for Reorganization Under Title 11 U.S. Bankruptcy Code.

## JURSIDICTION

This Court has full jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334(b) and the Standing Order of Reference dated June 22, 2016. Venue is proper in this district pursuant to 28 U.S.C. 1408 and 1409. This COURT retains jurisdiction as stated within the Order Modifying Automatic Stay, the Honorable Judge Bernstein signed the "Proposed Order" on June 22, 2016 which included the following order:

"ORDERED that this Court shall *retain jurisdiction* to hear and determine <u>all matters</u> arising from or related to the *implementation, interpretation,* and *enforcement* of this Order."

## BACKGROUND

Plaintiff named and served Breitburn Entities ("Debtors") on May 9, 2016 with Texas Tenth Amended Petition (Exhibit A) and Debtor's filed their answer to Plaintiff's suit on May 24, 2016 while under the jurisdiction of this court. On the same day, Debtor's filed a "Suggestion of Bankruptcy" (Exhibit B). By Debtors filing bankruptcy in New York, an automatic stay was placed on Plaintiff's suit in Texas, which involved multiple parties, and Plaintiff ("Pierce") had to file a motion in order for the stay to either be removed or modified to proceed with her Texas suit. Through the response and proposed order from Breitburn Entities, they state the following stipulations for modification of the automatic stay:

> *"In response to the Motion, the Debtors are willing to consent to a <u>limited modification of</u> the stay as set forth in the proposed order attached as Exhibit A hereto (the "Proposed Order"). The Proposed Order provides that the automatic stay will be modified solely to the extent necessary to permit Pierce (but not any other claimant, successor to or assignee of Pierce or any other party in the Texas Action) to prosecute the Pierce Claims to judgment in the Texas Action in order to determine and liquidate the same. As further set forth in the Proposed Order, <u>the stay will remain in effect for all other purposes</u> and will preclude (i) any assertion of new claims (in the Texas Action or otherwise) against the*

*Debtors; (ii) any effort to collect money or property from the Debtors; and (iii) any effort to enforce any judgment entered against or settlement entered into by the Debtors."*

## **ARGUMENT AND AUTHORITIES**

### Interpretation of Order Modifying Automatic Stay

1. According to the Order Modifying Automatic Stay (Exhibit C), Pierce was not allowed to assert any new claims against Breitburn Entities, however, Pierce filed a Twelfth Amended Petition (Exhibit D), amending her pleadings to include "new claims". As stated within the Pierce's new pleadings, the Twelfth Amended Petition which entailed new claims, did not pertain to Breitburn Entities.

2. Pierce's interpretation of the Order Modifying Automatic Stay was that she could not move forward in the Texas suit with Breitburn Entities, yet she could proceed with her case against all other defendants, because as stated by legal counsel Don Westbrook, Breitburn Entities fall under the "same" claim as some of the other named defendants (not the top surface claimants) in Pierce's suit.

3. The Order Modifying Automatic Stay also included that Pierce would not be able to pursue "efforts" to collect money or property from the debtors. Plaintiff's pleading included both claims of Slander and Trespass to Try Title amongst other claims.

   - *Slander is a pleading* which can incur a right to damages, which is an effort to collect money due to those damages.

- *Trespass to Try Title* is effort to prove a right to possession of property, hence, making it an effort to collect property.

Both claims of *Slander* and *Trespass to Try Title* are efforts to collect money and property, therefore, Plaintiff was not allowed to move forward with those claims as well as any new claims against Debtors.

4. The Order Modifying Automatic Stay also included a stipulation that Pierce may not pursue any effort to "enforce" any judgment. This means that Texas court was deprived of retaining jurisdiction to *(1)* enforce it's own judgment, *(2)* to hear any new claims, and to *(3)* entertain any claims which would afford Plaintiff ("Pierce") the opportunity to pursue efforts to collect money or property from the debtors; simply interpreted, Texas trial court was without jurisdiction over Breitburn Entities. A judgment is useless if it *cannot* be enforced. However, if a judgment in favor of Pierce was made by Texas trial court, it would include other parties besides Breitburn Entities, making it impossible for Pierce to achieve justice. Also, any claims adjudicated, or any judgment rendered on behalf of the debtors would be void, due to lack of jurisdiction.

In addition, this court would have lacked authority to enforce a judgment which involved multiple parties to whom it had no jurisdiction over and would have no authority to enforce a *"void"* judgment. Plaintiff will finally show this court that a judgment is void if it is shown that the court lacked jurisdiction *(1)* over a party or the property; *(2)* over the subject matter; *(3)* to enter a particular judgment; or (4) to act as a court. According to the Order Modifying Automatic Stay, Texas trial court lacked subject matter jurisdiction,

personal jurisdiction, jurisdiction to enter a judgment and its authority to act as a court as matters pertained to Breitburn Entities concerning Pierce's litigation. *Zarate, 40 S.W.3d at 621; Glunz, 908 S.W.2d at 255 (citing Cook v. Cameron, 733 S.W.2d 137, 140 (Tex.1987)); see also Browning v. Placke, 698 S.W.2d 362, 363 (Tex.1985).*

A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 [16 Pac. 197, 5 Am. St. Rep. 448]. An order that exceeds the jurisdiction of the court is void, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 565. Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted." Latana v. Hopper, 102 F. 2d 188; Chicago v. New York, 37 F Supp. 150. It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. It may be impeached in any action direct or collateral". Holder v. Scott, 396 S.W.2d 906. (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

Fraud Upon the Court

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court [Judges are officers of the court] so that the judicial machinery cannot perform in the usual manner its impartial; task of adjudging cases that are presented for adjudication."

Kenner v. C.I.R., 987 F.3d 689 (1968); Moore's Federal Practice, 2d ed., p. 512, 60.23. The 7th Circuit Court further stated, *"a decision produced by fraud upon the court is not in essence adecision at all, and never becomes final."* THE JUDGMENT IS VOID.

On March 17, 2017, this court followed protocol to dismiss plaintiff's Adversary claim based on what this court believed to have been a valid Final Judgment dismissing Pierce's suit with prejudice, as a result, this court filed a Memorandum of Decision to dismiss Pierce's adversary claim based on information provided by attorneys associated with Coghaln Crowson, LLP. The information which this court relied upon was fabricated and far from the truth as it pertains to actual record. This court relied upon the information concerning certain issues such as:

(1) *The Plea In Abatement Order filed on November 12, 2015*, (Exhibit E) this order was entered to allow Pierce to add parties which the court saw fit to be added due to them being potentially adversely affected. The order also stated those parties needed to be added or Pierce would need to *replea* in conformance with Texas Rules of Civil Procedure for Quiet Title and Declaratory Judgement. After close evaluation of the order concerning the prerequisites of Quiet Title and Declaratory Judgment, Plaintiff decided to replead in conformance with Texas Rules of Civil Procedure by removing Quiet Title and Declaratory Judgment and replacing the two claims with Trespass to Try Title. Plaintiff, Felicia Pierce then filed a Motion to Lift Abatement (Exhibit F) on January 23, 2016 which stated that Plaintiff complied with the court's November 12, 2015 Plea in Abatement Order. A hearing was set for the Motion to Lift Abatement as well as a hearing on defendant's Motion to Dismiss. However, Judge Vincent Dulweber (an officer

of the court) signed the order GRANTING Plaintiff's Motion to Lift Abatement (Exhibit G) along with all defendants' counsel agreement that Pierce complied. No other Plea in Abatement Order was entered into record after March 4, 2016, which proves that Pierce complied with the Plea in Abatement Order prior to the dismissal hearing on September 2, 2016, showing that a bar of res judicata based on *non-compliance* of a court's order does not apply because Texas court never reached the merits of the case. *Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)*

(2) *Plaintiff's Thirteenth Amended Petition filed on September 2, 2016 (Exhibit H)* (Not September 12, 2016). This court also relied upon other information provided by Coghlan Crowson, LLP that Pierce, after the hearing to dismiss Plaintiff's Twelfth Amended Petition on September 2, 2016 (Exhibit I), plaintiff filed a Thirteenth Amended Petition ten days later on September 12, 2016 (Exhibit J). It is strange that these lawyers (officers of the court) would fabricate the truth when in fact record proves that they all were present in court when the Thirteenth Amended Petition (which was timely filed September 2, 2016 at 8:40 am prior to the dismissal hearing) was distributed to these same attorneys/legal counsel for the defendants in hand and since trial had not commenced, there was no need for leave to amend. Pierce can show and prove to this court that the Thirteenth Amended Petition entered on September 12, 2016 was indeed a duplicate as stated in an email from one of the Texas court's district clerks sent to Pierce, a stamped copy of the document and a copy of the September 2, 2016 transcript which shows that all legal counsel for the defendants were present when the document was distributed to them in hand.

Since the Thirteenth Amended Petition was timely filed, it is odd that both the judge and the legal counsel would ignore such vital information, even more bizarre, the Thirteenth Amended Petition filed on September 2, 2016 is missing from the records sent to the Sixth Circuit Court of

Appeals from the Texas District Court of Gregg County and that same document was replaced with the duplicate filed on September 12, 2016 which indicates *tampering* of records. (Exhibit K see attached CD CR., VOL 1 of 2 pages 1334 and 1417). This is an example of Fraud upon the Court. If Pierce timely filed her *Thirteenth Amended Petition* (an amended petition is superior to the original T.R.C.P 64 and 65) and the defendant's counsel sought to dismiss Plaintiff's Twelfth Amended Petition, it would *not* be lawfully possible for this document to be ignored as irrelevant, but however ignoring it does show that it was beneficial to the defendants and their legal counsel, as a decision was made in their favor with aid of the judge presiding over the case. Judge Vincent Dulweber who presided over cause no. 2015-1679-CCL2 acknowledged in his Final Judgment that the document was filed on September 2, 2016, however, in the same document removes its credibility by making it appear to be inferior to the Twelfth Amended Petition, because he proceeded by dismissing the claims in the twelfth rather than the thirteenth petition. *Res judicata* would not apply in a case which was not properly dismissed and there is no proof that merits were heard. The Twelfth Amended Petition was dismissed instead of the timely filed Thirteenth Amended Petition whether the Texas courts have chosen to ignore this fact or not which demonstrates fraud upon the court.

<u>Bar of Res Judicata</u>

As mentioned on page nine of this court's Memorandum and Decision

"Under Texas law." The party relying on affirmative defense of res judicata

must prove:

(1) A prior final determination on the MERITS by a court of competent jurisdiction

*(Texas court did not have jurisdiction to render a final decision which included*

*Breitburn Entities and the merits of the case were never reached; Plaintiff's Motion for*

*Summary Judgement was on file for over a year without ever being disputed by the defendants or without being heard by the court prior to the dismissal on October 13, 2016, leaving element "1" unmet.)*

(2)  Identity of parties or those in privity with them; and

*(Since Texas court did not have jurisdiction of Breitburn Entities and none of the parties named in Plaintiff's suit hadn't any privity with them, this left element "2" unmet.)*

(3)  A second action based on the same claims as were or could've been raised

*(Even if the claims in the first suit were similar to the ones pled in the adversary, the parties held under Texas court's jurisdiction were not the same, making this element irrelevant and unaccomplished, leaving element "3" unmet.)*

## Deprivation of Rights under Color of Title *18 U.S. Code § 242*

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any <u>person</u> in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the <u>United States</u>, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both

1)  Debtors deprived Plaintiff of her right of possession to her property and all minerals which lay beneath due to their filing of bankruptcy.

2) Debtors deprived of Plaintiff of her right to heirship property due to their filing of bankruptcy.

3)  Debtors deprived Plaintiff of her right and privilege to enjoy her property and all minerals which lay beneath due to their filing of bankruptcy.

4) Debtors deprived Plaintiff of peace of mind and her mental serenity through filing Bankruptcy in another state (New York) which forced Plaintiff to fly despite her fear of heights to protect her property rights which caused more mental anguish due to their filing of bankruptcy.

- Plaintiff encountered episodes of uncontrollable crying
- Plaintiff was deprived of time and priceless and countless moments with her three children due to having to find ways around defendant's unlawful tactics to keep her from her property through filing bankruptcy under color of law.
- Plaintiff encountered lowered self-esteem and confidence
- Plaintiff lacked motivation to continue her adventure and business in music.
- Plaintiff has encountered loss of sleep, headaches and heart pains which has landed her in the hospital emergency room at Baylor Medical Center.

Damages Due to Deprivation under *18 U.S. Code § 242*

Plaintiff asks the court to award her $1.5 million for all of her claims under Deprivation of rights under color of law. Felicia Pierce has the right to damages for her serenity and because her time loss is priceless, no amount of money can recover what she has encountered. In addition.  the amount asked for is more than reasonable.

QRE Operating, LLC
- $750,000

Breitburn Operating, LP
- $750,000

## CONCLUSION

Plaintiff's interpretation of the Order Modifying Automatic Stay, the Texas court was not given jurisdiction to hear any new claims, enforce any efforts to collect money or property, nor was it with jurisdiction to enforce it's own judgment, and no option or jurisdiction would exist to enforce a void judgment from Texas court, for these reasons alone, Plaintiff believes to be the cause for Texas judge and the defendants' legal counsel to develop ulterior motives to dismiss Plaintiff's suit which caused fraud upon the court.

The Order Lifting the Abatement is clear evidence that the judge presiding over the case No. 2015-1679-CCL2, under color of law along with the defendant's legal counsel used unlawful tactics to deceive plaintiff into believing or ignoring the fact that an order had already been signed which showed she complied with the *only* abatement order given by the Texas trial court concerning her case, in addition, for the defendant's counsel to ignore the thirteenth and superior petition which was timely filed shows their intentions to defraud this court into believing that the case was dismissed with prejudice to force this court's hand into dismissing Pierce's adversary complaint even though Texas trial court never heard the merits of the case. Also, without any of the elements of res judicata being met, this court's March 24, 2017 judgment is made void and should be vacated due to being rendered based on fabricated and fraudulent filings made to this court from the Texas court by Coghlan Crowson, LLP representatives (Don Westbrook and Ricky Faulkner). According to federal law this court would be unable to make another court's void judgment valid in turn making any judgment rendered by this court void if depended upon on said void judgment of another court to base its decision.

Also, even though plaintiff ("Pierce") appealed Texas trial court's decision, the appellate court affirmed the trial court's decision, but after Pierce submitted a motion and a notice showing that

the Texas trial court *did not* have jurisdiction over Breitburn Entities, the Texas Appellate court ignored its calendar's date to Issue Mandate on December 8, 2017, and instead chose *NOT* to issue mandate and make final the judgment and memorandum decision it entered on September 29, 2017 as of today December 18, 2017. *(TRAP 18.1 Until the mandate issues, however, the appellate court's judgment is not final, and that court retains jurisdiction to decide rehearing petitions or otherwise amend its opinion or judgment.) (During this same period before the mandate issues (and, indeed, since the initiation of the appeal), the district court lacks jurisdiction, except for matters unrelated to the merits of the appeal or that are merely procedural, such as requests for attorney fees and costs or conferences to schedule anticipated future proceedings.))* Therefore, this court should vacate its judgment due to error in accepting filings based on fraud upon the court and Texas court's lack of jurisdiction to render a judgment on behalf of Debtors who have remained under jurisdiction of this court since May 16, 2016.

Finally, Plaintiff believes that she is also entitled to damages concerning deprivation of her rights as the defendant's (Debtor's) acted under color of law by filing bankruptcy and including into their property in their bankruptcy estate which they know they do not lawfully possess or own.

## PRAYER

**WHEREFORE**, Plaintiffs prays that this court acknowledges that it has continuously held jurisdiction over Breitburn Entities ("Debtors") since their bankruptcy filing of May 16, 2015.

**WHEREFORE**, Plaintiffs prays that this court voids its judgment due to fraud upon the court.

**WHEREFORE**, Plaintiff prays this court strikes the bar of res judicata from its record concerning Plaintiff's adversary complaint concerning the mineral estate included in Debtor's

bankruptcy estate pertaining to P.W. Warraner (*King, A.A.-A lease and any other mineral lease concerning Plaintiffs mineral property associated with Debtor's bankruptcy estate*).

**WHEREFORE**, Plaintiffs prays that this court allows Plaintiff to proceed with the merits of this case which has been attached to an Unsworn Declaration Under Penalty of Perjury pursuant 28 U.S. Code § 1746.

**WHEREFORE**, Plaintiffs prays that this court awards 1.5 million dollars ($1,500,000) in damages to Plaintiff due to deprivation of rights under color of law (does not include amounts asked in any affidavit or concerning any profits made from the property situated within P.W. Warraner survey).

Respectfully submitted,

/s/ *Felicia Pierce*

Felicia Pierce (Pro Se)

9764 Water Tree Dr.

McKinney, Texas 75070

(972) 876-9718

(469) 734-2855

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has sent by email to all parties connected with this adversary complaint on December 18, 2017 in accordance with Federal Rule of Civil Procedure.

_____/s/Felicia Pierce_____
Felicia Pierce

# EXHIBIT K

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X

In re:                                         :
                                               :        Chapter 11
                                               :
BREITBURN ENERGY                               :
PARTNERS L.P., *et al.*,                       :        Case No.: 16-11390 (SMB)
                                               :
                            Debtors.           :
-----------------------------------------------X
FELICIA PIERCE,                                :
                                               :
                            Plaintiff,         :
                                               :
         – against –                           :        Adv. Proc. No.: 16-01198 (SMB)
                                               :
BREITBURN ENERGY LP., ENTITIES,                :
                                               :
                            Defendants.        :
-----------------------------------------------X

## ORDER REOPENING ADVERSARY PROCEEDING
## AND SCHEDULING BRIEFING ON PLAINTIFF'S MOTION

The Plaintiff having made a motion (ECF Doc. # 30) to vacate the judgment

dismissing the complaint and for other relief set forth in the motion, it is hereby

ORDERED, that this adversary proceeding is reopened; and it is further

ORDERED, that the defendants are directed to file their response to the motion

within two weeks after the date of this order and the plaintiff may file a reply within four

weeks after the date of this order after which the motion will be deemed submitted.

Dated:  New York, New York
         January 3, 2018

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Court

To:

FELICIA PIERCE
*Plaintiff Pro Se*
9764 Water Tree Drive
McKinney, Texas 75070
Email:  scorpio76140@gmail.com


WEIL, GOTSHAL & MANGES LLP
*Attorneys for Defendants*
767 Fifth Avenue
New York, New York 10153

      Ray C. Schrock, P.C. Esq.
      Stephen Karotkin, Esq.
      Edward Soto, Esq.
          Of Counsel

# EXHIBIT L

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

In re:                                    :

                                          :         Chapter 11

BREITBURN ENERGY                          :

PARTNERS L.P., *et al.*,[1]               :         Case No.: 16-11390 (SMB)

                                          :

                    Debtors.              :

-------------------------------------------------X

FELICIA PIERCE,                           :

                                          :

                    Plaintiff,            :

                                          :

        – against –                       :         Adv. Proc. No.: 16-01198 (SMB)

                                          :

BREITBURN ENERGY LP., ENTITIES,           :

                                          :

                    Defendants.           :

-------------------------------------------------X

### MEMORANDUM DECISION AND ORDER
### DENYING MOTION TO VACATE JUDGMENT

**A P P E A R A N C E S:**

FELICIA PIERCE
*Pro Se*
9764 Water Tree Drive
McKinney, Texas 75070

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Defendants*
767 Fifth Avenue
New York, New York 10153

     Ray C. Schrock, P.C. Esq.
     Stephen Karotkin, Esq.
     Edward Soto, Esq.
       Of Counsel

---

[1]    The debtors in these chapter 11 cases (collectively, the "Debtors") are as follows: Breitburn Energy Partners LP; Breitburn GP LLC; Breitburn Operating LP; Breitburn Operating GP LLC; Breitburn Management Company LLC; Breitburn Finance Corporation; Alamitos Company; Beaver Creek Pipeline, L.L.C.; Breitburn Florida LLC; Breitburn Oklahoma LLC; Breitburn Sawtelle LLC; Breitburn Transpetco GP LLC; Breitburn Transpetco LP LLC; GTG Pipeline LLC; Mercury Michigan Company, LLC; Phoenix Production Company; QR Energy, LP; QRE GP, LLC; QRE Operating, LLC; Terra Energy Company LLC; Terra Pipeline Company LLC; and Transpetco Pipeline Company, L.P.

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Felicia Pierce ("Pierce") filed this adversary proceeding to obtain declaratory, monetary and injunctive relief to stop the Debtors (collectively, "Breitburn") from drilling on certain property in Texas (the "Texas Property") that Pierce claimed to own or have an interest in.  The Court concluded that her claims were barred by *res judicata* based on a decision by the County Court at Law of Gregg County, Texas (the "Texas Court") (*see Memorandum Decision Granting Motion to Dismiss Complaint*, dated Mar. 17, 2017 (the "*Memorandum Decision*") (ECF # 27),[2] and entered judgment dismissing the complaint.  (*Judgment for Dismissal of Adversary Proceeding*, dated March 24, 2017 (the "*Judgment*") (ECF # 29).)

Pierce has moved to vacate the *Judgment* and also seeks to assert a new claim. (*Plaintiff's Motion Concerning Matters Related to Order Modifying the Automatic Stay, Motion to Vacate Judgment Due to Fraud on the Court and Plaintiff's Motion for Damages Due to Deprivation Caused by Debtor's Bankruptcy Filing for Reorganization*, dated Dec. 22, 2017 (the "*Motion*") (ECF # 30).)  Breitburn opposed the *Motion*, (*Debtors' Response to Motion of Felicia Pierce*, dated Feb. 12, 2018 ("*Breitburn Response*") (ECF # 38)), and Pierce filed several more submissions in support of her arguments and to request oral argument.[3]  For the reasons that follow,

---

[2]   "ECF # ___" refers to the document number listed on the electronic docket of this adversary proceeding.  "ECF Main # ___" refers to the document number listed on the electronic docket of the main case.

[3]   (*See* ECF Doc. ## 34, 36, 37, 38 and 40; *see also* ECF Main ## 1985, 2366.)

the *Motion* is denied.

## BACKGROUND

The relevant facts and procedural history predating the *Motion* are set forth in the *Memorandum Decision*. Briefly, Pierce contended that she owned or had an interest in certain property located in Texas (the "Property") which she alleged was wrongfully acquired by A.A. King ("King") from Pierce's predecessors in interest earlier in the Twentieth Century. Prior to the commencement of these chapter 11 cases, she commenced litigation in Texas (the "Texas Action") seeking various forms of relief all dependent on the finding that she owned the Property or had an interest in it.

When the debtors filed these chapter 11 cases on March 15, 2016, several Breitburn entities were already defendants in the Texas Action. Pierce moved for relief from the automatic stay to continue the Texas Action, and limited stay relief was granted on consent. The relevant provisions of the Court's order stated:

> ORDERED that the automatic stay applicable in these chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code is modified solely to the limited extent necessary to permit Pierce (but not any other claimant, successor to or assignee of Pierce or any other party in the Texas Action) to prosecute the Pierce Claims to judgment in the Texas Action so that the Pierce Claims, if any, may be liquidated; and it is further
>
> ORDERED that the automatic stay is not modified in any other respect and shall continue in full force and effect, including, without limitation, with respect to (i) any assertion of new claims (in the Texas Action or otherwise) against the Debtors; (ii) any effort to collect money or property from the Debtors; or (iii) any effort to enforce any judgment or other relief that may be entered against or settlement entered into by the Debtors

(*Order Pursuant to 11 U.S.C. § 362(d) Granting Limited Modification of the Automatic Stay*, dated June 23, 2016 ("*Stay Relief Order*"), at 2 (emphasis in original) (ECF Main Doc. # 161).) The "Pierce Claims" referred to in the *Stay Relief Order* meant "[a]ll rights

and claims belonging solely to Pierce and asserted in or related to the Petition and the Texas Action." (*Debtors' Response to Motion of Felicia Pierce for Relief from the Automatic Stay,* dated June 22, 2016, at ¶ 6 (ECF Main Doc. 158); *Stay Relief Order* at 1 n. 2 ("Capitalized terms used but not defined herein shall have the meanings set forth in the Response.").)

Pierce then returned to the Texas Court to litigate the Pierce Claims. As a result of Pierce's failure despite repeated warnings by the Texas Court to join all parties and entities whose rights would be affected in the event the Court concluded that she owned or had an interest in the Property, the Texas Court granted the Texas defendants' second motion to dismiss the Texas Action with prejudice. Under Texas law, the dismissal with prejudice constituted an adjudication on the merits. Accordingly, I dismissed this adversary proceeding based on *res judicata*, (*Memorandum Decision* at 9), and the Court entered the *Judgment*.

The Court did not completely shut the door. The *Memorandum Decision* concluded that "[s]hould Pierce succeed in Texas in vacating, reversing or modifying the dismissal order in a manner that removes the *res judicata* bar, she may refile her adversary proceeding and Breitburn may renew its motion to dismiss or abstain." (*Id.* at 9-10.) However, the Texas Court of Appeals subsequently affirmed the judgment of the Texas Court dismissing the Texas Action with prejudice based upon Pierce's repeated failure to join necessary parties. *Pierce v. Blalack,* 535 S.W.3d 35, 43-44 (Tex. Ct. App. 2017).

Following the affirmance in Texas, Pierce filed the *Motion* which was clarified by Pierce at oral argument. She seeks to vacate the *Judgment* on the ground that the Texas Court lacked subject matter jurisdiction to render the judgment which formed the basis of this Court's dismissal on *res judicata* grounds and Breitburn's attorneys committed a fraud on this Court and on the Texas Court whose judgment I relied on in dismissing the adversary proceeding. Pierce also asserts a new claim for money damages under 18 U.S.C. § 242. Breitburn contends, among other things, that section 242 is part of the U.S. criminal code, and does not give rise to a private right of action. The Court need not decide this question because even if it did give Pierce a right of action, it is a newly asserted claim that does not provide a basis to vacate the *Judgment*.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding with certain immaterial differences by Rule 9024 of the Federal Rules of Bankruptcy Procedure, governs motions to vacate final judgments. It provides in pertinent part:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void. . . .

Rule 60(d) further provides in pertinent part:

> (d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:
>
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; [or]

. . . .

(3) set aside a judgment for fraud on the court.[4]

## A.     Lack of Jurisdiction

Pierce does not challenge this Court's jurisdiction to enter the *Judgment*.

Instead, she argues that the effect of the automatic stay and the *Stay Relief Order*

deprived the Texas Court of jurisdiction to render the judgment on which this Court

relied in dismissing the adversary proceeding.  A judgment rendered by a court lacking

subject matter jurisdiction is void and subject to collateral attack.  *Da Silva v. Kinsho*

*Int'l Corp.*, 229 F.3d 358, 362 (2d Cir. 2000).  Similarly, with the exception of

ministerial acts by the clerk of court, the continuation of pre-petition litigation and the

entry of a judgment against the debtor in violation of the automatic stay are also void.

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994).

That said, Pierce's "voidness" argument is based on a misunderstanding of the

*Stay Relief Order*.  The *Stay Relief Order* is typical of the type entered in a bankruptcy

case to expedite the resolution of all of the issues raised in prepetition litigation

especially when they are intertwined with the issues involving non-debtor parties.

While the automatic stay does not apply to non-debtors, the non-bankruptcy litigation

cannot proceed as a practical matter without the debtor.  A stay relief order of the type

entered in this case allows the party suing the debtor to liquidate its claims or declare its

rights, but also requires the party, now a judgment creditor, to return to the bankruptcy

court to enforce the judgment.  For example, if the non-bankruptcy court enters a

---

[4]      Prior to December 2007, the provisions in Rule 60(d) were part of Rule 60(b).  Rule 60 was restyled in 2007, but the changes were stylistic only and were not intended to make substantive changes. FED. R. CIV. P. 60 advisory committee's note to 2007 amendment.

money judgment, the judgment creditor must collect that judgment through the claims allowance process – it cannot seize and liquidate property of the estate to satisfy the judgment.  If the non-bankruptcy court declares rights, the judgment creditor must still return to the Bankruptcy Court to enforce those rights in accordance with the scheme laid out by the Bankruptcy Code.

The *Stay Relief Order* was designed to achieve this goal.  The debtors were part of a much larger group of defendants and potential, additional defendants who could be adversely affected by a Texas Court determination that Pierce owned or had an interest in the Property.  The *Stay Relief Order* expressly granted Pierce the right "to prosecute the Pierce Claims to judgment in the Texas Action so that the Pierce Claims, if any, may be liquidated."  If Pierce prevailed, she would have to return to this Court to enforce her rights (or seek further stay relief to enforce her rights in Texas).

Pierce argues that she believed that the *Stay Relief Order* precluded her from litigating against Breitburn in the Texas Action, based on a representation by one of Breitburn's lawyers in that case.  (*Motion* at ECF pp. 3 of 15)[5] ("Pierce's interpretation of the Order Modifying Automatic Stay was that she could not move forward in the Texas suit with Breitburn Entities, yet she could proceed with her case against all other defendants, because as stated by legal counsel Don Westbrook, Breitburn Entities fall under the 'same' claim as some of the other named defendants (not the top surface claimants) in Pierce's suit.")  Pierce seems to imply that she was misled by Breitburn's

---

[5]     "ECF pp." refers to the page numbers at the top of each docketed document imprinted by the Court's CM/ECF system.

counsel, but she has not pointed to a transcript or pleading in which the statement was made.

Furthermore, any claim that she was misled or misinterpreted the *Stay Relief Order* is belied by her conduct.  The *Stay Relief Order* is dated June 22, 2016.  Pierce filed the *Plaintiff's Thirteenth Amended Petition for Trespass to Try Title and Slander of Title* (the "Thirteenth Amended Petition")[6] on September 2, 2016.  Despite her professed belief that she could not proceed against the debtors in these cases, the Thirteenth Amended Petition named numerous Breitburn entities as defendants. (*Breitburn Dismissal Motion,* Ex. F, at ECF pp. 420 at 466.)  In addition, the Texas Court heard the motions to dismiss on September 2, 2016.  There is no indication in the Texas Court's decision, (*see id.* at ECF pp. 464-66 of 466), or the subsequent appeal, 535 S.W.3d 35, that Pierce argued that the Texas Action could not proceed or that the Texas Court lacked jurisdiction in light of the automatic stay or the *Stay Relief Order.*

In short, the *Stay Relief Order* authorized Pierce to prosecute the Pierce Claims in Texas to judgment.  The Pierce Claims included any claim for relief, whether monetary, declaratory or injunctive, that depended on a determination that she owned the Property or had an interest in it.  The Texas Court had jurisdiction to decide those questions, and its dismissal with prejudice based on Pierce's failure to join necessary parties has been upheld on appeal in Texas.

---

[6]      A copy of the Thirteenth Amended Petition is annexed to the *Notice of Motion of Debtors Pursuant to 28 U.S.C. § 1334 and Fed. R. Bankr. P. 7009 and 7012 for Dismissal of or Abstention from Adversary Proceeding,* dated Sept. 15, 2016 ("*Breitburn Dismissal Motion*") (ECF Doc. # 8), as Exhibit F, at ECF pp. 461 of 466.

## B.    Fraud on the Court

"'Fraud on the court' encompasses conduct which represents an attempt to defile the court itself, or a fraud perpetrated by officers of the court so that the judicial machinery cannot perform its impartial task of judging cases." *Gazes v. DelPrete* (*In re Clinton Street Food Corp.*), 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000); *accord Armatas v. Maroulleti*, 690 F. App'x 731, 732 (2d Cir. 2017) (summary order) (quoting *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir.1995). "'[F]raud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir. 1988); *accord Linkco, Inc. v. Akikusa*, 367 F. App'x 180, 182 (2d Cir.) (summary order), *cert. denied*, 562 U.S. 833 (2010).  A party seeking to vacate a judgment for fraud on the court must show, by clear and convincing evidence, "that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering the presentation of the opposing party's claim or defense." *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*, 191 F.Supp.2d 440, 445 (S.D.N.Y.2002) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989)); *see also Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010).

A claim of fraud on the court must be made in the court that was allegedly defrauded.  *O'Neill v. Hernandez*, No. 08 Civ. 1689 (KMW), 2010 WL 1257512, at *14 (S.D.N.Y. Mar. 25, 2010); *Pandozy v. Segan*, 518 F. Supp 2d 550, 555 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009); *Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 52 (S.D.N.Y. 1986); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[T]he inherent

power also allows a federal court to vacate its *own* judgment upon proof that a fraud has been perpetrated upon the court.") (emphasis added). Thus, Pierce cannot seek an order from this Court vacating a judgment entered by the Texas Court based upon an alleged fraud on the Texas Court. Moreover, she recently moved in the Texas Court to vacate its judgment based on lack of jurisdiction and fraud on that court, (*see Plaintiff's Motion to Vacate Void Judgment Due to Lack of Jurisdiction Pursuant FRCP 60(B)(3)(4)(6) and Fraud Upon the Court,* (ECF Doc. # 43), but the Texas Court declined to set a hearing concluding that the Texas appellate court's mandate affirming the dismissal deprived the Texas Court of any further jurisdiction over Pierce's claims. (ECF Doc. # 44, at ECF pp. 21 of 21.) She is, therefore, foreclosed from making any further arguments in the Texas Court that Breitburn committed a fraud on the Texas Court.

Pierce also claims that Breitburn committed a fraud on *this* Court by misrepresenting that she filed her Thirteenth Amended Petition in the Texas Court on September 12, 2016 rather than September 2, 2016. This argument requires some amplification. The Texas defendants had moved to dismiss the Twelfth Amended Petition, and their motion was heard on September 2, 2016. On that same day, Pierce filed her Thirteenth Amended Petition. She argues that the Thirteenth Amended Petition superseded the Twelfth Amended Petition, and by implication, Breitburn misrepresented the filing date as September 12 in order to argue that the only outstanding pleading on the hearing date was the Twelfth Amended Petition.

The Debtors did represent to this Court that the Thirteenth Amended Petition was filed on September 12, 2016, (*Breitburn Dismissal Motion* ¶ 9), and the Court

mentioned the erroneous filing date in the *Memorandum Decision*. The error, however, was immaterial to this Court's disposition of the adversary proceeding, and did not involve conduct that affected the integrity of the judicial process. The Texas Court had previously ruled that Pierce had to join "those persons or entities that would be adversely affected by ruling in favor of Plaintiff." (*Breitburn Dismissal Motion*, Ex. G, at ECF pp. 465 of 466.) These included parties, like Breitburn, that had acquired their interests in the Property from King or his successors in interest. The Texas Court had entered an Order on Plea of Abatement, giving Pierce ninety days to join the necessary parties, and thereafter granted Pierce an additional ninety days to join the necessary parties. (*Id.*)[7]

The Texas Court acknowledged the filing of the Thirteenth Amended Petition on September 2, 2016, (*Breitburn Dismissal Motion*, Ex. G, at ECF pp. 465 of 466.) The Thirteenth Amended Petition asserted claims for Trespass to Try Title and Slander of Title, and according to the Texas Court, Pierce dropped all of the unserved defendants and involuntary plaintiffs because, she argued, the relevant Texas rule "only requires the addition of those persons or entities in possession of the real property made the subject of the Trespass to Try Title suit." (*Id.*)

The Texas Court disagreed; the Thirteenth Amended Petition did not cure the fundamental defect of non-joinder. It ruled that the joinder provisions of Rule 39 of the

---

[7]     Pierce had moved in the Texas Court to lift the Abatement, (*Motion*, Ex. F), and the Texas Court entered an Order Lifting Abatement on Mar. 4, 2016. (*Id.*, Ex. G.) Pierce argues that this shows that she complied with the Texas Court's earlier directives to join the necessary parties. Obviously, her interpretation of the order does not square with the Texas Court's subsequent dismissal of the Texas Action for failure to join necessary parties. Moreover, she could have raised this issue in Texas, and the Court of Appeals affirmance necessarily rejected her argument that she had joined all necessary parties.

Texas Rules of Civil Procedure[8] applied to her action for trespass to try title as well as her declaratory judgment claims, (*id.*) (citing *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 180 (Tex. Ct. App. 2008)), and Rule 39, required the joinder of everyone whose interest in the Property might be affected, *e.g.*, those persons and entities that acquired their interests through the King line.  Accordingly, it dismissed the Texas Action with prejudice in the exercise of its discretion, and the Texas Court of Appeals affirmed.  Furthermore, as explained in the *Memorandum Decision*, although the Texas Court did not reach the merits of Pierce's claim, the dismissal with prejudice constituted a final adjudication on the merits for purposes of *res judicata* under Texas law.

In conclusion, the *Motion* is denied and the Clerk's office is respectfully directed to close this adversary proceeding.

So ordered.

Dated: New York, New York
         May 7, 2018

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge

---

[8]      Rule 39(a) of the Texas Rules of Civil Procedure provides:

**(a) Persons to be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

FedEx Express

earthsmart
FedEx carbon-neutral
envelope shipping

RECEIVED
SONY DOCKET UNIT

2018 JUL 26 PM 3:38

Align top of FedEx Express® shipping label here.

ORIGIN ID:DNEA   (972) 876-9718
FELICIA PIERCE

3708 BLUFF CREEK LN

MCKINNEY, TX 75071
UNITED STATES US

SHIP DATE: 25JUL18
ACTWGT: 1.30 LB
CAD: 6990830/SSF01904

BILL CREDIT CARD

TO USDC SOUTHERN DIST OF NY
PROSE INTAKE UNIT
DANIELPATRICKMOYNIHAN US COURTHOUSE
500 PEARL ST RM 200
NEW YORK NY 10007
(000) 000-0000          REF:

INV:
PO:                      DEPT:



FedEx
Express

E

TRK# 7820 0207 0580
0201

THU - 26 JUL 10:30A
PRIORITY OVERNIGHT

06 PCTA

10007
NY-US  EWR